Honorable Judge Lorna G. Scofield
District Judge of US District Court
Southern District of New York
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007



Brian P. Scibetta, Esq.
Chong S. Lim, Esq.
McCalla Raymer Leibert Pierce, LLC
420 Lexington Avenue, Suite 840
New York, NY 10170
Tel: 347-286-7409
Attorneys for Defendants,
JPMorgan Chase bank, N.A., and
Federal National Mortgage Association

To : Hon Judge Lorna G. Scofiel as requested by the court I am respectfully asking the court for leave to amend the complaint. However due to the many causes of action and the tremendous amount of research I have given to the case it is not possible for me to put forth a properly prepared amended complaint as well address the questions that is asked of me by the court. Upon investigation and research there are other parties that need to added to the complaint which definitely bring more clarity to plaintiff's arguments etc. unfortunately I do not have the resources of a large law firm with paralegals and associates interns etc to fully prepare the complaint /brief it deserves. As previously stated upon review of the formal and informal discovery, I have concluded that additional causes of action and parties should be added to the complaint. I request that I be affored the right under Rule 15 to amend and supplement my pleadings as a matter of course within 21 days after serving inter alia.

Dated: 10-04-2022

Marcia Pennicott  Pro Per
Plaintiff

Honorable Judge Lorna G. Scofield
District Judge of US District Court
Southern District of New York
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

Brian P. Scibetta, Esq.
Chong S. Lim, Esq.
McCalla Raymer Leibert Pierce, LLC
420 Lexington Avenue, Suite 840
New York, NY 10170
Tel: 347-286-7409
Attorneys for Defendants,
JPMorgan Chase bank, N.A., and
Federal National Mortgage Association



UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
MARCIA PENNICOTT                                    Case No: 1:21-cv-04575-(LGS)

                            Plaintiff,

        -against-


FEDERAL NATIONAL MORTGAGE ASSOCIATION;
JPMORGAN CHASE BANK, N.A.;  REAL PROPERTY
991 GRANT AVENUE PELHAM  NEW YORK SECTION
166.44, BLOCK 1, LOT 71.;  "JOHN DOE, 1" through 100",
"JANE DOE  1 through 100", "XYZ CORP. 1" through  100" ,
ABC  LLC  1" through 100 "inclusive,  the names being fictitious
and unknown to plaintiff, such persons and/or entities being
intended to be those persons and/or entities with an interest in the
real property known as 991 Grant Avenue, Pelham, New York[
10803]
                            Defendants
-------------------------------------------------------------------X

## SECOND AMENDED COMPLAINT

Now comes Marcia Pennicott proceeding in propia persona respectfully shows and alleges the
following. That is a second amendment to the complaint and interposes the following.

## INTRODUCTION

1. This is a civil action against J.P. Morgan Chase & Company and J.P. Morgan Chase Bank, N.A.; Federal National Mortgage Association at al; for misconduct related to their origination and servicing of the Marcia Pennicott mortgage. As described in the allegations below, Defendants' misconduct resulted in the issuance of improper mortgages, premature and unauthorized foreclosures, violation of service members' and other homeowners' rights and protections, the use of false and deceptive affidavits and other documents, and the waste and abuse of taxpayer funds. Each of the allegations regarding Defendants contained herein applies to instances in which one or more, and in some cases all, of the Defendants engaged in the conduct alleged.

## THE PARTIES

2. This action is brought to seek injunctive relief, restitution for plaintiff, and civil penalties for violation of the consumer protection laws of their States.

3. Defendant JPMorgan Chase Bank, N.A. is a national banking association. It is headquartered in Columbus, Ohio. On September 25, 2008, Washington Mutual Bank., F.S.B, a federal savings bank headquartered in Henderson, Nevada, failed, and J.P. Morgan Chase Bank, N.A., purchased substantially all of the assets and assumed all deposit and substantially all other liabilities of Washington Mutual Bank., F.S.B., pursuant to a Purchase and Assumption Agreement with the Federal Deposit Insurance Corporation (FDIC) and the FDIC as Receiver for Washington Mutual Bank, F.S.B. Collectively the two defendants identified in this paragraph are referred to here as "J.P. Morgan." The business of J.P. Morgan and its subsidiaries and affiliates includes the origination and servicing of mortgage loans.

4.  That at all times hereinafter mentioned, defendant REAL PROPERTY 991 GRANT

    AVENUE PELHAM NEW YORK SECTION 166.44, BLOCK 1, LOT 71 that is it is

    the "res' or a thing (as a property, interest, or status) as opposed to a person that is the

    object of right.

5.  That at all times hereinafter mentioned, defendant, FEDERAL NATIONAL

    MORTGAGE ASSOCIATION, (hereinafter, "Fannie Mae"), is a federal corporation

    with its principal place of business at 14221 Dallas Parkway Dallas, Texas 75254.

6.  Plaintiff is ignorant of the true names and capacities of defendants sued herein as "…

    DOES 1 through 100" , inclusive, and therefore sues these defendants by such fictitious

    names and all persons unknown claiming any legal or equitable right, title, estate, lien, or

    interest in the property described in the complaint adverse to plaintiff(s title, or any cloud

    on Plaintiff 's title thereto. Plaintiff will amend this complaint to allege their true names

    and capacities when ascertained.

## JURISDICTION AND VENUE

7.  This Court has personal jurisdiction over the Banks because the Banks have transacted

    business in this District, and because the Banks have committed acts proscribed by the

    False Claims Act in this District.

8.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the

    action arises under the laws of the United States, pursuant to 28 U.S.C. § 1345 because

    this is a civil action commenced by the United States, pursuant to 28 U.S.C. § 1355(a)

    because this is an action for the recovery or enforcement of a fine or penalty incurred

under an Act of Congress, and pursuant to 31 U.S.C. § 3732(a) to the extent the claims

arise under the False Claims Act,31 U.S.C. §§ 3729 to 3733.

9. Pursuant to 28 U.S.C. § 1367 and 31 U.S.C. § 3732(b), this Court has supplemental

jurisdiction over the subject matter of the claims asserted by the States in this action

because those claims are so related to the claims asserted by the United States that they

form part of the same case or controversy, and because those claims arise out of the same

transactions or occurrences as the action brought by the United States under the False

Claims Act, 31 U.S.C. §§ 3729 to 3733.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) and 31 U.S.C.

§ 3732(a).

## BACKGROUND

### Overview of Relevant Federal Programs

### The Federal Housing Administration (FHA)

11. The FHA provides mortgage insurance on loans made by FHA-approved lenders

throughout the United States.  Among other things, FHA insures mortgages on "single

family" housing, which refers to one- to four- family dwellings.  See, e.g., 12 U.S.C. §

1709; see generally 24 C.F.R. Part 203.

12. FHA mortgage insurance provides lenders with protection against losses when home

buyers default on mortgage loans insured by FHA.  See generally 12 U.S.C. § 1710, 24

C.F.R. Part 203.

13. FHA-approved lenders, known as Direct Endorsement Lenders, ensure that loans meet

strict underwriting criteria, including income-verification, credit analysis, and property

appraisal, established by the FHA to be eligible for insurance.  See 24 C.F.R. § 203.5(c)-

(e) (Direct Endorsement requirements for underwriter due diligence, mortgagor income evaluation and appraisal).

14. The FHA insurance operations are funded by a statutorily established Mutual Mortgage Insurance Fund (MMIF). 12 U.S.C. § 1708(a). The MMIF is sustained by insurance premiums, and the Secretary of the U.S.Department of Housing and Urban Development is required to provide for an annual actuarial study to assess the financial position of the MMIF. 12 U.S.C. § 1708(a)(4), (7).

15. The FHA insurance program, by reducing the risk borne by approved lenders, is designed to stimulate lending to creditworthy borrowers, thereby increasing homeownership and aiding local communities in the form of community development, increased tax bases, and related benefits.

16. The Department of Agriculture's Rural Housing Service Rural Housing Guarantee Program (RHS)

17. The RHS program provides mortgage insurance guarantees for loans made to qualified borrowers for housing in rural communities. See 7 C.F.R. § 1980.345 (applicant eligibility). The RHS partners with a broad range of eligible lenders. When an eligible lender certifies that all program requirements have been met, delivers a completed Loan Closing Report, and pays the guarantee fee, the RHS concurrently executes a loan note guarantee. 7 C.F.R. §§ 1980.309(a) (qualification of lenders), 1980.361 (issuance of loan note guarantee).

18. The RHS loan program is intended "to assist eligible households in obtaining adequate but modest, decent, safe, and sanitary dwellings and related facilities for their own use in rural areas." 7 C.F.R. § 1980.301(a).

19. Like the FHA insurance program, the RHS program promotes lending to creditworthy

borrowers that meet the Department of Agriculture's underwriting requirements. The United States Department of Veterans Affairs (VA) Loan Guaranty Service Home Loan

### PROGRAM

20. Even though plaintiff's loan was not a VA loan notation is made here by its inclusion in the explanation showing that the VA Home Loan Program's guaranties are issued to help eligible service members, veterans, reservists and certain unmarried surviving spouses obtain homes, condominiums, residential cooperative housing units, and manufactured homes. 38 U.S.C. §§ 3701(b)(3), 3710(a), 3712. The primary purpose of the VA Home Loan Program is to help such individuals finance the purchase of homes on more advantageous terms than typically would be available to them.

21. The VA provides a repayment guarantee to qualified lenders equal to a specified percentage of the loan upon default of the primary debtor. 38 U.S.C §§ 3702(d), 3712(c)(2)-(3); 38 C.F.R. §§ 36.4202, 36.4225. Only loans meeting the VA's underwriting requirements are entitled to the VA's insurance guarantee.

22. By providing protection in the event of a default, the VA's insurance program encourages lenders to provide financing to veterans.

### The United States Trustee Program

23. The United States Trustee Program is a component of the Department of Justice that seeks to promote the efficiency and protect the integrity of the Federal bankruptcy system. To further the public interest in the just, speedy and economical resolution of cases filed under the Bankruptcy Code, the Program monitors the conduct of bankruptcy parties and private estate trustees, oversees related administrative functions, and acts to

ensure compliance with applicable laws and procedures.  It also identifies and helps investigate bankruptcy fraud and abuse in coordination with United States Attorneys, the Federal Bureau of Investigation, and other law enforcement agencies.

The primary role of the U.S. Trustee Program is to serve as the "watchdog" over the bankruptcy process. United States Trustees supervise the administration of liquidation proceedings under Chapter 7 of the Bankruptcy Code, reorganization proceedings under Chapter 11, family farm and fisherman reorganization proceedings under Chapter 12, and "Wage-earner" reorganization proceedings under Chapter 13.

24. Specific responsibilities of the United States Trustees include appointing and supervising private trustees who administer Chapter 7, 12, and 13 bankruptcy estates (and serving as trustees in such cases where private trustees are unable or unwilling to serve); taking legal action to enforce the requirements of the Bankruptcy Code and to prevent fraud and abuse; referring matters for investigation and criminal prosecution when appropriate; ensuring that bankruptcy estates are administered promptly and efficiently, and that professional fees are reasonable; appointing and convening creditors' committees in Chapter 11 business reorganization cases; reviewing disclosure statements and applications for the retention of professionals; and advocating matters relating to the Bankruptcy Code and rules of procedure in court.

### The Single Family Mortgage Industry

25. The single family mortgage industry consists of financial services and other firms that originate, underwrite, securitize, and service mortgages for residential properties designed to house one- to four-family dwellings.

26. Mortgage origination is the process whereby a lender loans money to a borrower and receives a security interest in property, through a mortgage or comparable device that secures the loan. Origination generally includes all the steps from receiving a loan application through disbursal of the loan proceeds.

27. For more than thirty years, mortgages typically have been "pooled" to create an investment vehicle, often denominated as a trust, and interests in the trusts have been sold to investors that own interests in payment streams generated by principal and interest payments by the borrowers.

28. After mortgages are originated, a "servicer" is responsible for mortgage administration activities, known as servicing activities, which generally include collecting payments from mortgagors; applying payments made in an agreed-upon order to the mortgagor's indebtedness; distributing payments after allowable deductions to the investment trust entities for distribution to investors;  making advances to cover delinquent mortgage payments and other costs, such as the costs of protecting and maintaining properties that collateralize mortgage loans when mortgagors fail to do so; pursuing collections from delinquent mortgagors; and pursuing either loss mitigation or foreclosure, as appropriate, to minimize the loss to investors and others when mortgagors become delinquent on mortgage payments.

### The United States' Stimulus / Rescue Efforts

29. Beginning in the fall of 2008, the federal government instituted several measures to try to stabilize the housing and credit markets and assist troubled homeowners.

30. In October 2008, the Emergency Economic Stabilization Act of 2008 (EESA) was passed to promote stability and liquidity in the financial system. Among other things, EESA authorized the Secretary of the Treasury to establish the Troubled Asset Relief Program (TARP). TARP funds were used, in part, to promote various mortgage loan modification programs.

31. The Making Home Affordable (MHA) Program. In March 2009, the United States launched the MHA Program. The MHA Program included the Home Affordable Modification Program (HAMP), a Treasury program that uses TARP funds to provide incentives for mortgage servicers to modify eligible first-lien mortgages.

32. HAMP uses incentive payments to encourage loan servicers and owners of mortgage loans or bonds backed by mortgage loans to modify eligible first lien mortgages so that monthly payments of homeowners who are in default or at imminent risk of default will be reduced to affordable and sustainable levels.

**The Home Price Decline Protection Incentives (HPDP) initiative.**

33. The HPDP initiative is designed to encourage modifications of loans in markets hardest hit by falling home prices. The HPDP initiative provides investors with additional incentives for loan modifications on properties located in areas where home prices have recently declined and where investors are concerned that price declines may persist.

34. The Principal Reduction Alternative (PRA). PRA is designed to encourage the use of principal reduction in modifications for eligible borrowers whose homes are worth significantly less than the remaining outstanding principal balances of their first-lien mortgage loans. It provides investor incentives to offset a portion of the principal reduction.

35. The Home Affordable Unemployment Program (UP).  UP is designed to offer assistance to unemployed homeowners through temporary forbearance of a portion of their mortgage payments.

36. The Home Affordable Foreclosure Alternatives Program (HAFA). HAFA is designed to provide incentives to servicers, investors and borrowers to utilize short sales and deeds-in-lieu of foreclosure for HAMP-eligible loans in cases in which the borrower can no longer afford to stay in their home but want to avoid foreclosure.  Under this program, the servicer releases the lien against the property and the investor waives all rights to seek a deficiency judgment against a borrower who uses a short sale or deed-in-lieu when the property is worth less than the outstanding principal balance of the mortgage.

37. The Second Lien Modification Program (2MP).  2MP is designed to modify second lien mortgages when a corresponding first lien is modified under HAMP.

38. The FHA-HAMP Program.  The FHA-HAMP Program is designed to provide compensation to the holders and servicers of FHA-insured mortgages that are modified under FHA-HAMP, to reduce payments to more affordable levels.

39. The Treasury/FHA Second-Lien Program (FHA2LP).  FHA2LP is designed to facilitate refinancing under the FHA Short Refinance Program by reducing second liens.  Treasury provides incentives to participating servicers and investors who agree to partial or full extinguishment of second liens associated with an FHA refinance.

40. The FHA Refinance for Borrowers with Negative Equity (FHA Short Refinance) Program.  This program is partially supported by TARP funds and allows servicers and investors who write down a borrower's principal balance on a non-FHA-insured, existing, underwater, first-lien mortgage loan in connection with a refinancing to obtain

FHA insurance on the newly refinanced mortgage. Treasury has provided a TARP-funded letter of credit for up to $8 billion in loss coverage on these newly refinanced FHA loans.

41. Housing Finance Agency Hardest Hit Fund (HHF). HHF is a TARP-funded program designed to fund foreclosure prevention programs run by state housing finance agencies in states hit hardest by the decrease in home prices and in states with high unemployment rates. Eighteen states and Washington, D.C. have received approval for aid through this program.

## FACTUAL ALLEGATIONS

### The Banks' Servicing Misconduct

42. Each of the Banks services home mortgage loans secured by residential properties owned by individual citizens of the Plaintiff States, and of the United States.

43. Each Bank is engaged in trade or commerce in each of the Plaintiff States and is subject to the consumer protection laws of the States in the conduct of their debt collection, loss mitigation and foreclosure activities. The consumer protection laws of the Plaintiff States include laws prohibiting unfair or deceptive practices.

### The Banks' Unfair, Deceptive, and Unlawful Servicing Processes

44. Under the States' consumer protection laws, the Banks are prohibited from engaging in unfair or deceptive practices with respect to consumers.

45. In the course of their conduct, management and oversight of loan servicing in the Plaintiff States, the Banks have engaged in a pattern of unfair and deceptive practices.

46. The Banks' unfair and deceptive practices in the discharge of their loan servicing activities, include, but are not limited to, the following:

a.    failing to timely and accurately apply payments made by borrowers and failing to maintain accurate account statements;

b.    charging excessive or improper fees for default-related services;

c.    failing to properly oversee third party vendors involved in servicing activities on behalf of the Banks;

d.    imposing force-placed insurance without properly notifying the borrowers and when borrowers already had adequate coverage;

e.    providing borrowers false or misleading information in response to borrower complaints; and failing to maintain appropriate staffing, training, and quality control systems.

47. The Banks' Unfair, Deceptive, and Unlawful Loan Modification and Loss Mitigation Processes Under the States' consumer protection laws, the Banks are prohibited from engaging in unfair or deceptive practices with respect to consumers.

48. Pursuant to HUD regulations and FHA guidance, FHA-approved mortgage lenders and their servicers are required to engage in loss-mitigation efforts to avoid the foreclosure of HUD-insured single family residential mortgages. E.g., 24 C.F.R. § 203.500 et seq.; Mortgagee Letter 2008-07 ("Treble Damages for Failure to Engage in Loss Mitigation") (Sept. 26, 2008); Mortgagee Letter 1996-25 ("Existing Alternatives to Foreclosure -- Loss Mitigation") (May 8, 1996). Thus, when acting as a servicer, the Banks were required to refrain from foreclosing on

any FHA insured mortgage where a default could be addressed by modifying the terms of the mortgage or other less-costly alternatives to foreclosure were available.

49. Under the Treasury's various rescue and stimulus programs, the Banks received monetary incentives from the Federal government in exchange for the commitment to make efforts to modify defaulting borrowers' single family residential mortgages.  See, e.g., Making Home Affordable Handbook v.1.0, ch.13 ("Incentive Compensation") (Aug. 19, 2010).  Under the programs, the Banks agreed to fulfill requirements set forth in program guidelines and servicer participation agreements.

50. Each of the Banks regularly conducts or manages loan modifications on behalf of the entities that hold the loans and mortgages and that hired the Banks as servicers.

51. In the course of their servicing and oversight of mortgage loans, the Banks violated federal laws, program requirements and contractual requirements governing loss mitigation.

52. In the course of their conduct, management and oversight of loan modification conducted unfavorably  in the plaintiff actual modification attempts the defendant did  engaged in a pattern of unfair and deceptive practices.

53. The Banks' failure to discharge their required loan modification obligations, and related unfair and deceptive practices, include, but are not limited to, the following:

a.      failing to perform proper loan modification underwriting;

b.      failing to gather or losing loan modification application documentation and other paper work;

c.      failing to provide adequate staffing to implement programs;

d.      failing to adequately train staff responsible for loan modifications;

e.      failing to establish adequate processes for loan modifications;

f.      allowing borrowers to stay in trial modifications for excessive time periods;

g.    wrongfully denying modification applications;

h.    failing to respond to borrower inquiries;

i.    providing false or misleading information to consumers while referring loans to foreclosure during the loan modification application process in this the "Pennicott Mortgage ";

j.    providing false or misleading information to Marcia Pennicott while initiating foreclosures where Marcia Pennicott was in good faith actively pursuing a loss mitigation alternative offered by the Bank;

k.    providing false or misleading information to Marcia Pennicott while scheduling and conducting a foreclosure sale during the loan application process and during trial loan modification periods;

l.    misrepresenting to Marcia Pennicott that loss mitigation programs would provide relief from the initiation of foreclosure or further foreclosure efforts;

m.    failing to provide accurate and timely information to Marcia Pennicott when she was in need of, and eligible for, loss mitigation services, including loan modifications;

n.    falsely advising Marcia Pennicott that they must be at least 60 days delinquent in loan payments to qualify for a loan modification;

o.    miscalculating Marcia Pennicott's eligibility for loan modification programs and improperly denying loan modification relief to eligible borrowers;

p.    misleading Marcia Pennicott by representing that loan modification applications will be handled promptly when Banks regularly fail to act on loan modifications in a timely manner;

q.    failing to properly process Marcia Pennicott s' applications for loan modifications, including failing to account for documents submitted by borrowers and failing to respond to borrowers' reasonable requests for information and assistance;

r.    failing to assign adequate staff resources with sufficient training to handle the demand from distressed borrowers; and

s.    misleading Marcia Pennicott by providing false or deceptive reasons for denial of loan modifications.

## Wrongful Conduct Related to Foreclosures

54. Under the States' consumer protection laws, the Banks are prohibited from engaging in unfair or deceptive practices with respect to consumers.

55. FHA regulations and guidance and HAMP and other MHA servicer participation agreements establish requirements to be followed in the foreclosure of single family residential mortgages that are FHA insured, or where the servicer conducting the foreclosure is an MHA participant.

56. Each of the Banks regularly conducts or manages foreclosures on behalf of entities that hold mortgage loans and have contracted with the Bank to service such loans.

57. In the course of their conduct, management, and oversight of foreclosures, the Banks violated FHA and MHA foreclosure requirements.

58. In the course of their conduct, management, and oversight of foreclosures in the plaintiff States, the defendant s and defendants predecessors have engaged in a pattern of unfair and deceptive practices.

59. The defendant JP Mortgage Chase national Association failure to follow appropriate foreclosure procedures, and related unfair and deceptive practices include, but are not limited to, the following:

**a.**     failing to properly identify the foreclosing party;

**b.**     charging improper fees related to foreclosures;    .

c.     preparing, executing, notarizing or presenting false and misleading documents, filing false and misleading documents with courts and government agencies, or otherwise using false or misleading documents as part of the foreclosure process (including, but not limited to, affidavits, declarations, certifications, substitutions of trustees, and assignments);

**d.**     preparing, executing, or filing affidavits in foreclosure proceedings without personal knowledge of the assertions in the affidavits and without review of any information or documentation to verify the assertions in such affidavits. This practice of repeated false attestation of information in affidavits is popularly known as "robo-signing." Where third parties engaged in robo-signing on behalf of the Banks, they did so with the knowledge and approval of the Banks;

**e.**     executing and filing affidavits in foreclosure proceeding that were not properly notarized in accordance with applicable state law;

**f.**     misrepresenting the identity, office, or legal status of the affiant executing foreclosure-related documents;

**g.**     inappropriately charging servicing, document creation, recordation and other costs and expenses related to foreclosures; and

**h.**     inappropriately dual-tracking foreclosure and loan modification activities, and failing to communicate with borrowers with respect to foreclosure activities.

## The Banks' Origination Misconduct

### Unfair and Deceptive Origination Practices

60. Under the States' consumer protection laws, the Banks are prohibited from engaging in

unfair or deceptive practices with respect to consumers.

61. One or more of the defendants regularly originates mortgage loans.

62. In the course of their origination of mortgage loans in the Plaintiff Home State of New York

the defendants predecessors have engaged in a pattern of unfair and deceptive practices.

## The Direct Endorsement Program

63. The FHA's Direct Endorsement Program is a vital part of its single-family insured mortgage

program. Under the Direct Endorsement Program, the FHA does not review or approve

borrower loan applications. Rather, the FHA approves lenders, called Direct Endorsement

Lenders (DE Lenders), which have the responsibility and obligation for underwriting the loan

and determining whether a proposed mortgage is eligible for FHA insurance according to FHA

rules and requirements. Unconditional DE Lenders employ Direct Endorsement Underwriters,

who are authorized to perform the underwriting of mortgage loans to be insured by the FHA.

The DE Lenders give the FHA full information and documentation about an underwritten loan

only after the mortgage has closed, and both the underwriter and DE Lender certify compliance

with FHA requirements in submitting the loan for mortgage insurance. Although the FHA

conducts regular desk reviews and brings enforcement actions, the FHA does not, and given its

resources cannot, review the details of every loan. The FHA therefore relies on the underwriter's

and DE Lender's certifications and due diligence as evidence of the insurability of a mortgage.

64. DE Lenders are responsible for all aspects of the mortgage application, the property analysis,

and loan underwriting. The FHA relies on DE Lenders to determine (1) a borrower's ability and

willingness to repay a mortgage loan, 24 C.F.R. § 203.5(d), and (2) appraisal of the property offered as security. 24 C.F.R. § 203.5(e)(3).

65. Careful compliance by DE Lenders with all FHA requirements is important in part because if a borrower defaults on an FHA-insured mortgage, the holder of the mortgage can submit a claim to the FHA for any loss associated with the defaulted mortgage.

66. FHA regulations provide that each DE Lender owes the FHA the duty to "exercise the same level of care which it would exercise in obtaining and verifying information for a loan in which the mortgagee would be entirely dependent on the property as security to protect its investment." 24 C.F.R. § 203.5(c). DE Lenders also owe the FHA a common law duty of due diligence. See 48 Fed. Reg. 11928, 11932 (Mar. 22, 1983). In addition, a fiduciary relationship exists between DE Lenders and the FHA. DE Lenders have a duty to the FHA to act with the utmost good faith, candor, honesty, integrity, fairness, undivided loyalty, and fidelity, and to refrain from taking advantage of the FHA by misrepresentation or lack of disclosure. DE Lenders are required to exercise sound judgment, prudence, and due diligence on behalf of the FHA in endorsing mortgages for FHA insurance.

67. DE Lenders are required to be familiar with, and to comply with, the current versions of governing FHA Handbooks and Mortgagee Letters, including HUD Handbook 4155.1, Mortgage Credit Analysis for Mortgage Insurance on One- to Four-Unit Mortgage Loans, HUD Handbook 4155.2, Lender's Guide to the Single Family Mortgage Insurance Process, and HUD Handbook 4150.2, Valuation Analysis for Single Family One- to Four-Unit Dwellings.

## Failure to Comply with Underwriting Requirements

68. At all relevant times, JP Morgan Chase Bank , N.A. was a mortgage lender that may have participated in HUD's Direct Endorsement Program. Subject to the requirements of the program, JP Morgan Chase Bank , N.A was authorized to "originate" - i.e., make - and to underwrite mortgage loans to first-time and low-income home buyers and to low-income home owners refinancing mortgages, that were insured by the FHA, an agency within HUD. In exchange for having the authority to originate and underwrite FHA-insured loans, JP Morgan Chase Bank , N.A was obligated to determine whether prospective borrowers meet minimal credit-worthiness criteria and to certify to HUD that borrowers who received loans met the criteria. In the event that an FHA-insured loan originated by JP Morgan Chase Bank , N.A goes into default, the FHA has guaranteed payment of the outstanding portion of the mortgage principal, accrued interest, and costs owed by the borrower.

69. JP Morgan Chase Bank , N.A. failed to comply with HUD regulations and requirements of the Direct Endorsement Program governing the origination and underwriting of FHA-insured loans. As a result, the FHA has thus far incurred hundreds of millions of dollars in damages with respect to claims paid for loans that Countrywide knowingly made to unqualified borrowers. Additionally, thousands of the Countrywide loans are currently in default and have not yet been submitted as claims to the FHA.

70. JP Morgan Chase Bank , N.A has submitted claims for payment to the FHA with respect to FHA-insured mortgage loans originated and underwritten by  JP Morgan Chase Bank , N.A in contravention of HUD regulations and the requirements of the Direct Endorsement Program during the period 2003 through April 30, 2009. On or around February 4th, 2014 the Department of Justice today announced that JPMorgan Chase (JPMC) will pay $614 million for violating the

False Claims Act by knowingly originating and underwriting non-compliant mortgage loans submitted for insurance coverage and guarantees by the Department of Housing and Urban Development's (HUD) Federal Housing Administration (FHA) and the Department of Veterans Affairs (VA).

### Failure to Comply With Quality Control Requirements

71. To qualify as a DE Lender, a lender has to have a fully functioning Quality Control (QC) Program that complies with FHA requirements from the date of its initial FHA approval until final surrender or termination of its approval.

72. QC plans ensure that DE Lenders follow all the FHA requirements, ensure that procedures and personnel used by DE Lenders meet FHA requirements, and provide for the correction, where necessary, and reporting of problems once a DE Lender becomes aware of their existence.

73. Under its QC requirements, the FHA requires DE Lenders to review all early payment defaults. Early payment defaults are mortgages that go into default (i.e., are more than 60 days past due) within the first six payments of the mortgage.

74. Early payment defaults may indicate problems in the underwriting process. DE Lenders are required to review early payment defaults so they can identify, correct, and report them to the FHA.

75. A DE Lender whose QC program fails to provide for appropriate review of each early payment default is in violation of the FHA's QC requirements.

76. The defendant JP Morgan Chase Bank NA submitted loans for insurance endorsement or claims for insurance benefits for FHA loans that the Banks endorsed or underwrote as a

participant in the FHA's Direct Endorsement Program while failing to implement applicable QC measures.

77. The defendant(s) failed to review early payment defaults.

78. The defendants failed to dedicate sufficient staff to QC.

79. The defendants failed to address dysfunctions in their QC system.

80. The FHA has paid insurance claims relating to mortgages insured by FHA based on the defendants false certifications that they had properly established and functioning QC programs. The FHA would not have made a financial commitment to pay such mortgage insurance if it had known about JP Morgan Chase Bank NA QC failures.

81. To get and maintain DE Lender status, a DE Lender has to submit an annual certification to the FHA, stating that it conforms to all HUD/FHA regulations, handbooks, and policies.

82. Absent such a certification, a DE Lender cannot submit a mortgage for FHA insurance endorsement.

83. Contrary to the annual certifications made by the defendant(s) , they failed to have QC programs as mandated by FHA requirements.

84. The FHA has paid insurance claims relating to mortgages insured by FHA based on the Banks' false certifications. The FHA would not have made a financial commitment to pay such mortgage insurance if it had known about the Banks' false certifications.

## The defendant's Bankruptcy-Related Misconduct

84. In the ordinary course of their businesses, the Banks regularly appear as creditors, or on behalf of creditors, in bankruptcy cases, including bankruptcy cases commenced in this district and over which this Court has original jurisdiction under 28 U.S.C. § 1334, seeking the payment of money from bankruptcy estates and/or prosecuting motions seeking relief from the automatic stay to foreclose on consumer mortgages.

85. The defendant(s) have bankruptcy procedures that are utilized or relied upon by the Banks and their attorneys, contractors, and other agents when the Banks file documents, including proofs of claim and motions seeking relief from the automatic stay in bankruptcy cases. Use of these bankruptcy procedures has resulted in an insufficient level of oversight and safeguards regarding pleadings and documents filed by the Banks or their agents in bankruptcy cases and their conduct during the bankruptcy cases.

86. Use of these bankruptcy procedures has resulted in the filing of signed pleadings and documents in bankruptcy cases as to which the signatory has not conducted a reasonable inquiry into the factual contentions or allegations, as required by applicable law, including Fed. R. Civ. P. 11 and Fed. R. Bankr. P. 9011.

87. Use of these bankruptcy procedures has also resulted in a failure to exercise adequate supervision over the defendant(s) attorneys, contractors, and other agents in bankruptcy proceedings.

88. As a result of the use of inadequate bankruptcy procedures, the conduct of the Banks or their agents has resulted in, among other things, some or all of the following:

a.      making representations that were inaccurate, misleading, false, or for which the Banks, at the time, did not have a reasonable basis to make, including without limitation representations contained in proofs of claim under 11 U.S.C. § 501, motions for relief from the automatic stay under 11 U.S.C. § 362, or other documents;

b.      filing proofs of claim, motions for relief from stay, or other documents that failed to include documentation required under the Federal Rules of Bankruptcy Procedure, local court rules, local court standing orders, or other applicable rules or law, such as the original or a duplicate of the writing on which the secured claim is based, evidence that the security interest has been perfected, a statement setting forth the terms of and any documentation of a transfer of the claim, or other documentation;

c.      filing lost note affidavits in connection with proofs of claim, motions for relief from stay, or other documents that were inaccurate, misleading, or false, or for which the Banks, at the time, did not have a reasonable basis to make;

d.      filing proofs of claim, motions for relief from stay, or other documents where the Banks sought payment from debtors or bankruptcy estates for amounts that the Banks were not legally entitled to collect, such as seeking principal, interest, fees, escrow amounts, and/or advances that were not incurred, were in excess of what is collectable under the loan documents, were not reasonable or appropriate to protect the note holder's interest in the property and rights under the security instrument, or were inconsistent with an approved loan modification;

e.      filing proofs of claim or motions for relief from stay without required itemizations for principal, interest, fees, escrow amounts, and/or advances;

f.      filing proofs of claim, motions for relief from stay, or other documents that inaccurately represented or failed to document ownership of the claim or right to seek relief;

g.      commencing collection activities against the debtor or the debtor's property without court authorization, or in violation of the terms of a confirmed chapter 13 plan, the discharge injunction under 11 U.S.C. § 524, or the automatic stay under 11 U.S.C. § 362;

h.      filing proofs of claim, motions for relief from stay, or other documents or otherwise commencing collection activities seeking to recover amounts on debts that have been paid or satisfied, including through a refinance of the debt, or a sale or short sale of the collateral;

i.      collecting, or attempting to collect, attorney's fees and other charges for the preparation and filing of proofs of claim, motions for relief from stay, or other documents, that the Banks ultimately withdrew or that a court denied;

j.      failing to promptly and accurately apply payments resulting in inaccurate loan accounting and wrongful or inaccurate allegations of loan defaults;

k.      filing proofs of claim, motions for relief from stay, or other documents that inaccurately or falsely represented they were signed by a person with direct knowledge of the matters alleged in the filing;

l.      filing affidavits or other documents requiring notarization where the Banks inaccurately or falsely represented that the documents were validly notarized;

m.      failing to provide required notices to the debtor, trustee, or the court regarding payment changes resulting from a change in interest rate and/or escrow charges;

n.      failing to provide notice to the debtor, trustee, or court regarding fees, charges, and expenses assessed or incurred after the petition date; or

o.      failing to promptly provide a reconciliation of payments received with respect to the debtor's obligations in the case or failing to appropriately update the Banks' systems of record, including upon dismissal or closure of a bankruptcy case.

89. The Banks implemented and relied upon inadequate bankruptcy procedures despite having actual or constructive notice that such procedures could, and did, lead to the errors described above.

90. Use of these bankruptcy procedures has also resulted in the Banks seeking inappropriate relief from debtors under the Bankruptcy Code, including under 11 U.S.C. §§ 362 and 501, and in violation of 11 U.S.C. § 524.


**COUNT I:**
**UNFAIR AND DECEPTIVE CONSUMER PRACTICES WITH RESPECT TO LOAN SERVICING**

91. The allegations in paragraphs 1 through 90 above are incorporated herein by reference.

92. The loan servicing conduct of the Banks, as described above, constitutes unfair or deceptive practices in violation of the consumer protection laws of each State.

93. The Banks' unlawful conduct has resulted in injury to the States and citizens of the States who have had home loans serviced by the Banks. The harm sustained by such citizens includes payment of improper fees and charges, unreasonable delays and expenses to obtain loss mitigation relief, improper denial of loss mitigation relief, and loss of homes due to improper,

unlawful, or undocumented foreclosures. The harm to the States includes the subversion of their legal process and the sustained violations of their laws. The States have had to incur substantial expenses in the investigations and attempts to obtain remedies for the Banks' unlawful conduct.

**COUNT II**
UNFAIR AND DECEPTIVE CONSUMER PRACTICES WITH RESPECT TO
FORECLOSURE PROCESSING

94. The allegations in paragraphs 1 through 93 above are incorporated herein by reference.

95. The foreclosure processing conduct of the Banks, as described above, constitutes unfair or deceptive practices in violation of the consumer protection laws of each State.

96. The Banks' unlawful conduct has resulted in injury to the States and citizens of the States who have had home loans serviced by the Banks. The harm sustained by such citizens includes payment of improper fees and charges, unreasonable delays and expenses to obtain loss mitigation relief, improper denial of loss mitigation relief, and loss of homes due to improper, unlawful, or undocumented foreclosures. The harm to the States includes the subversion of their legal process and the sustained violations of their laws. The States have had to incur substantial expenses in the investigations and attempts to obtain remedies for the Banks' unlawful conduct.

**COUNT III**
UNFAIR AND DECEPTIVE CONSUMER PRACTICES WITH RESPECT TO LOAN
ORIGINATION

97. The allegations in paragraphs 1 through 96 above are incorporated herein by reference.

98. The loan origination conduct of the Banks, as described above, constitutes unfair or deceptive practices in violation of the consumer protection laws of each State.

99. The Banks' unlawful conduct has resulted in injury to the States and citizens of the States who have had home loans serviced by the Banks. The harm sustained by such citizens includes

payment of improper fees and charges, unreasonably high mortgage payments, unaffordable

mortgages, and loss of homes. The harm to the States includes the subversion of their legal

processes and the sustained violations of their laws. The States have had to incur substantial

expenses in the investigations and attempts to obtain remedies for the Banks' unlawful conduct.

**COUNT IV**
VIOLATIONS OF THE FALSE CLAIMS ACT, 31 U.S.C. § 3729(a)(1)(A), (a)(1)(B), (a)(1)(C)
and (a)(1)(G) (2009), and 31 U.S.C. §3729(a)(1), (a)(2), (a)(3) and (a)(7) (1986)

The allegations in paragraphs 1 through 99 above are incorporated herein by reference.

100. By virtue of the acts described above, the Banks knowingly presented or caused to be

presented to the United States false or fraudulent claims for payment or approval, including but

not limited to improper claims for payment of FHA residential mortgage insurance or guarantees.

101. In so doing, the Defendants acted knowingly; that is, the Banks possessed actual knowledge

that the claims for payment were false or fraudulent; acted in deliberate ignorance of the truth or

falsity of the claims for payment; or acted in reckless disregard of the truth or falsity of the

claims for payment.

102.    By virtue of the acts described above, the Banks made, used, or caused to be made or

used, a false record or statement material to a false or fraudulent claim.

103.    In so doing, the Defendants acted knowingly; that is, the Banks possessed actual

knowledge that the information, statements and representations were false or fraudulent; acted in

deliberate ignorance of the truth or falsity of the information, statements and representations; or

acted in reckless disregard of the truth or falsity of the information, statements and

representations.

104.    By virtue of the acts described above, the Banks made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the government, and concealed or improperly avoided or decreased an obligation to pay or transmit money or property to the United States.

105.    In so doing, the Defendants acted knowingly; that is, the Banks possessed actual knowledge that the information, statements and representations were false or fraudulent; acted in deliberate ignorance of the truth or falsity of the information, statements and representations; or acted in reckless disregard of the truth or falsity of the information, statements and representations.

106. By virtue of the acts described above, the Banks conspired with one or more persons: to present or cause to be presented to the United States false or fraudulent claims for payment or approval; to make, use, or cause to be made or used, a false record or statement material to a false or fraudulent claim; and, to make, use, or cause to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the government; or to conceal or improperly avoid or decrease an obligation to pay or transmit money or property to the United States.

**COUNT V**
**VIOLATION OF THE FINANCIAL INSTITUTIONS REFORM, RECOVERY AND ENFORCEMENT ACT OF 1989, 12 U.S.C. § 1833A (FIRREA)**

The allegations in paragraphs 1 through 106 above are incorporated herein by reference.

107. The defendants knowingly made or presented false and fictitious claims to Departments of the United States.

108. The claims were material to decisions of the United States.

109. In connection with matters within the jurisdiction of the United States, the Banks knowingly and willfully engaged in conduct that: (a) falsified, concealed or covered up by artifices, schemes or devices, material facts, (b) made statements and representations that violate 18 U.S.C. § 1001(a), and (c) made and used false writings or documents knowing the same to contain materially false and fictitious statements and entries.

110. Banks' schemes affected federally insured financial institutions.

**COUNT VI**
VIOLATION OF THE SERVICEMEMBERS CIVIL RELIEF ACT, 50 U.S.C. APP. §§ 501, ET SEQ.

111. The allegations in paragraphs 1 through 110 above are incorporated herein by reference.

112. The financial firms engaged in the wrongful conduct described herein violated the protections afforded servicemembers by the SCRA and 50 U.S.C. App. §§ 521, 527 and 533 and constituted a pattern or practice of violation.

113. The servicemembers affected by such wrongful conduct suffered damages and are aggrieved persons under the SCRA.

114. The financial firms engaged in the wrongful conduct described herein acted intentionally, willfully, and/or in disregard of the rights of the affected servicemembers.

**COUNT VII**
DECLARATORY JUDGMENT UNDER 28 U.S.C. §§ 2201 and 2202 REGARDING THE BANKS' BANKRUPTCY MISCONDUCT

The allegations in paragraphs 1 through 114 above are incorporated herein by reference.

115. The Banks implemented and relied on inadequate bankruptcy procedures and thereby have prejudiced debtors, creditors, including the United States, and the courts in bankruptcy cases,

have caused increased errors, delays, and costs of administration in bankruptcy cases, and constitute a continuing abuse of the bankruptcy process.

116. The Banks implemented and relied on inadequate bankruptcy procedures and thereby have violated the standards of conduct required of creditors by applicable law, including the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, or have caused violations of such law.

117. The Banks implemented and relied upon inadequate bankruptcy procedures that abused the bankruptcy process.

118. The Banks' unlawful conduct has resulted in injury to the United States and to debtors in bankruptcy who have had their home loans serviced by the Banks.  The harm sustained by such debtors includes payment of improper fees and charges, unreasonable delays and expenses in their bankruptcy cases, and loss of homes due to improper, unlawful, or undocumented foreclosures.  The harm sustained by the United States includes reduced and delayed recoveries to the United States in its capacity as a creditor in bankruptcy cases.  Such conduct has also caused the United States to assume increased administrative duties in monitoring bankruptcy cases, and to incur expenses in the investigations and litigation of the Banks' unlawful conduct.

**COUNT VIII**
DAMAGES UNDER COMMON LAW RELATED TO THE BANKS' BANKRUPTCY MISCONDUCT

119. The allegations in paragraphs 1 through 118 above are incorporated herein by reference.
120. The Banks implemented and relied on inadequate bankruptcy procedures and thereby has prejudiced debtors, creditors, including the United States, and the courts in bankruptcy cases, has

led to increased errors, delays, and costs of administration in bankruptcy cases, and constitutes a continuing abuse of the bankruptcy process.

121. The Banks' abuse of the bankruptcy process violated a duty or duties owed by the Banks to the debtors, the courts, and other parties in such bankruptcy cases, including the United States.

122. The Banks' abuse of the bankruptcy process violates a federal policy, reflected in the Bankruptcy Code and the Bankruptcy Rules, in favor of the efficient and equitable administration of bankruptcy cases, as well as the policy of ensuring accuracy in claims submitted to the bankruptcy courts.

123. The Banks' unlawful conduct has resulted in injury to the United States and to debtors in bankruptcy who have had their home loans serviced by the Banks. The harm sustained by such debtors includes payment of improper fees and charges, unreasonable delays and expenses in their bankruptcy cases, and loss of homes due to improper, unlawful, or undocumented foreclosures. The harm sustained by the United States includes reduced and delayed recoveries to the United States in its capacity as a creditor in bankruptcy cases. Such conduct

has also caused the United States to assume increased administrative duties in monitoring bankruptcy cases, and to incur expenses in the investigations and litigation of the Banks' unlawful conduct.

## REQUEST FOR RELIEF

Plaintiff respectfully request that the court grant her requested relief for leave to file this second amended complaint and further leave to amend this amended complaint within the procedures of FRCP but not limited therein. Plaintiff contends that additional time is needed to properly research and present an amended complaint as the court has stated in the decision and Order.

WHEREFORE, Plaintiff demands judgment against Defendants, and for declaratory Injunctive , punitive , compensatory and for further and other relief as the court deems just and proper: Plaintiff asserts and reserve all rights without prejudice.

Dated: 10-04-2022

Respectfully presented,

Marcia Pennicott - Pro Per

All Rights Reserved

Sworn To Before Me

This 4th day of Oct 2022

NOTARY

Joseph E Mason
Notary Public, State of New York
Reg. No. 01MA6066394
Qualified in Westchester County
Commission Expires November13th, 2025

Honorable Judge Lorna G. Scofiel
District Judge of US District Court
Southern District of New York
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

Brian P. Scibetta, Esq.
Chong S. Lim, Esq.
McCalla Raymer Leibert Pierce, LLC
420 Lexington Avenue, Suite 840
New York, NY 10170
Tel: 347-286-7409
Attorneys for Defendants,
JPMorgan Chase bank, N.A., and
Federal National Mortgage Association

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

MARCIA PENNICOTT                                                    Case No: 1:21-cv-04575- (LGS)

                                          Plaintiff,

        -against-

FEDERAL NATIONAL MORTGAGE ASSOCIATION;
JPMORGAN CHASE BANK, N.A.; REAL PROPERTY
991 GRANT AVENUE PELHAM NEW YORK SECTION
166.44, BLOCK 1, LOT 71.; "JOHN DOE, 1" through 100",
"JANE DOE 1 through 100", "XYZ CORP. 1" through 100",
ABC LLC 1" through 100 "inclusive, the names being fictitious
and unknown to plaintiff, such persons and/or entities being
intended to be those persons and/or entities with an interest in the
real property known as 991 Grant Avenue, Pelham, New York[
10803]
                                          Defendants
-------------------------------------------------------------------------X

**Documenting the Right to Bring Forth Constitutional Challenges** Marcia Pennicott

Plaintiff/affiant in the within action hereby equivocate her assertion of Rule 5.1 Constitutional

Challenge to a Statute, inter alia presents the following:

**" The SECURED RIGHT of "the People."**

1. It is Plaintiff's intent to challenge the following issues in this presentment:

a. The statutes and their application.

b. Presumption of law.

c. *Prima facie* evidence.

d. Policies, Procedures, and Rules of the Court.

e. The Right to Challenge.

f. The Misapplication of the SOVEREIGN IMMUNITIES DOCTRINE and rouge agents.

g. Definition of the "SUPREME LAW OF THE LAND" universal meaning.

i. The Clerk Style Manual.

j. The policy of allowing officers of the Court to maintain the status and the capacity of two different branches of Government.

k. The Dual Oath taking by Public Officials, Officers of The Court, and Trust Agents.

l. The Denial of the Protection of the Bill of Rights and associated Inalienable Rights.

m. A CHALLENGE TO THE RESTRICTION placed upon the people respecting the right to challenge a statute is unconstitutional.

n. A Challenge to the DISTRICT's Jurisdiction.

o. A Challenge to The Unconstitutional Requirement, which Prohibits a "**learned**" jury from interpreting the laws and/or statutes.

p. the doctrine of *res judicatca* of a State Court Judgment over a contract claim which originated under Federal laws, statutes and codes, as FDIC and other federal guidelines dictate.

q. Also whether plaintiff can assert a private right of action as Qui Tam under the false Claim Act inter alia as opposed to violation of the Martin Act inter alia which is exclusive to the State Attorney General

r. A challenge in contract action such as foreclosures as o whether the issue of standing is constitutional and prudential and whether the prima facie presumption that " state courts are not bound to adhere to federal standing requirements" See US Bank v. Nelson, 36 N.Y.3d 998, 1003 n.4 (N.Y. 2020). Is a constitution deprivation of the plaintiff's rights of due process inter alia to access the court and all of her unlimited God given , corporal unalienable numerated and un-enumerated rights.

2. Each of the aforementioned points affect the rights of the Plaintiff directly and/or indirectly with reference to the instant matter and Affiant does hereby exercise the right to highlight the conflict under the secured rights protected by the Supreme Law of The

Land. It is fully understood that Congress has long required every State of the Union, Insular Possessions, Forts, Magazines, and/or territories to adopt "**the Bill of Rights**" **of the Constitution for the United States of America**," and incorporated within the framework of the secured rights of the people within their Jurisdictional District, the Courts have long recognized the aforementioned requirements - *See also*: E. McPherson, *The Political History of the United States of America During the Period of Reconstruction* 184 (1871); E. Foner, Reconstruction: America's Unfinished Revolution 1863-1877, p. 272 (1988). In 1874, Congress passed legislation to ensure that every Territory's Organic Act included the protections of the Constitution and civil rights embodied in other Federal laws. *See*: Rev. Stat. § 1891 (1874).

**I.      POSITIVE LAW TITLE 28 USC: CONSTITUTIONAL CHALLENGE! (An Affidavit supported by Court opinion with Federal Challenge and Questions Incorporated within its framework)- An Affidavit supported by statements of CLAIMS:**

### Constitutional Questions and Challenges: Stated Claims

1.      This Court has it is believed, a constitutional duty to enforce the laws as intended by Congress, who, obtain their authority from the people of this Great State.

2.      This Court is presumably said to be a Court of law, hence; if this is a Court of law then why does the Court rely on statutes when statutes are only the appearance of law?

3.      "The presumptions in favor of the validity of a statute are ordinarily only *prima facie*." A presumption, and/or so-called legal theory is presumably not law and has never been considered law. In fact, the word presumption does not even appear anywhere in law (*the supreme law of the State is held as, the Constitution, which is not an opinion as is a fact that has been accepted generally by the people of this great State, the State legislature as well as the State Courts*), therefore; if the Constitution is the law, then why do the Courts not rely on the law and the mere appearance of law?

4.      *Prima Facie*. The definition of this term only symbolizes the appearance of, and not the actual substance. How can something by mere appearance be construed and/or considered as law and/or evidence of law? The answer to this question by Law, should and or must be based on the law and not a principal, and/or policy, and/or practice. The law of the land as noted above is Supreme, not the statute, and/or *prima facie* presumption of law as such was the will of the people. It is the people who empower Congress to express their will and limits the authority of Congress to enact laws that would abridge the rights of the people to a fair, impartial, lawful proceeding(s) and/or trial otherwise known as due process of law secured by the Bill of Rights and the Supreme law of the land including the right to property.

**II.     Is the Court Aware of the Constitutional Requirements?**

1.  **Whereas** the Third Section of Article Six of the Constitution of the United States mandates that, "The **senators** and **representatives** mentioned above and the members of

the several State **legislatures, executives,** and **Judicial officers**, both of the United States and of the several States, shall be bound by oath of affirmation to support the Constitution; but no religious test shall ever be required as a qualification to any office or public trust under the United States, and

2. **Whereas** "An act to regulate the time and manner of administering certain oath" is the first law passed by
the United States Congress after the ratification of the Constitution of the "United States Statutes at Large" as 1 Stat. 23, and

3. **Whereas** 1 U.S.C. 112: Statutes at Large; contents admissibility as evidence and mandates that the United States Statutes at Large, "*Shall be legal evidence of laws ... In all the Courts of the United States, the several States, the territories, and the insular possessions of the United States.*" {not apparently "**THE LAW**" of the land} ... In all the Courts of the United States, the several States, the territories, and the insular possessions of the United States..."

   a. It appears that this is the case, by appearance, therefore; the Plaintiff's questions continue as follows:

   The Court operates under presumption of law [*A presumption is not evidence, but it is a rule of law which governs until sufficient evidence to the contrary appears*] and because it appears that a presumption violates the Due Process Clause of the First, Forth & Fifth Amendments to the United States Constitutions BILL OF RIGHTS, such appears to violate an individual's right to innocence until proven guilty. If all one would need to do is to bring forth "sufficient evidence to the contrary," as such would mean that a presumption could be utilized to disprove a presumption, which apparently finds no standing, no grounds, nor foundation within the Constitution of the United States, IE: "THE LAW, as determined by the people of the United States when mandating that 'no person shall be held to answer for a crime nor be *deprived of life, liberty, or property without due process of law*.' The Courts have presumed that this applies only to criminal matters, however; the deprivation(s) of the right to life, liberty, and/or property does not always involve a criminal matter. Note that the Fifth Amendment applies to civil matters as well and to bring forth evidence that is not solidified and/or based on reality as conclusive, denies the individual the secured right to innocence, and not to be deprived of life, liberty, and/or property, as presumption of law would violate the Due Process Clause of the FIFTH AMENDMENT of the Constitution for the United States of America?

   b. Since, 1 U.S.C. 112: Statutes at Large; contents admissibility as evidence and mandates that The United States Statutes at Large "*Shall be legal evidence of laws.*" How is it possible for a presumptive code, where only the title is construed as **positive law**, can regulate what is or is not evidence of law? Is this not similar to the "pot calling the kettle black" or a dog disliking a wolf because it presumes it, the Wolf is not a canine? In other words, it does not promote due process nor does it make any sense. How is it possible to take something that is not and presume that it is, unless

somebody comes up and says it isn't, and then propose that it isn't to remain a fact? There is one absolute truth that no one can challenge and such is, that two different truths cannot exist. Either something is the truth or it simply is not! **Either the statute is law or it is not!** As demonstrated, it is fundamentally agreed upon by the Courts that **statutes are not the law!** It does not State that, due process, regardless of what statement is made afterwards, what words are conjured together to create some sort of spell, can change the FACT that Statutes are not Law but only Prima Facie, as statutes, codes, regulations, and/or ordinances are not the law when we are referencing "THE SUPREME LAW OF THE LAND." Is this not correct? Again, it would be helpful if we received precise answers from the Court because this matter involves everyone who enters through the doors either electronically, telephonically, via videoconferencing and/or physically.

### IV.    Other Evidence in Question Supporting this Affidavit:

1. The fees associated with the Courts are budgeted into the fiscal year budget for the Court which is applied to the Court annual budgets universally around the nation. Is this double jeopardy resulting in a violation of the Fifth Amendment to the United States of America's Bill of Rights guarantee which prohibits such a deprivation? Does the Constitution prohibit the Government whether local or national from subjecting the State citizens to such unconstitutional deprivations? To require a citizen or a taxpayer to pay the Court a second time after they have received the annual budget allocation, from a Payor of Federal contributive taxes, not a violation of Due Process? Does this amount to unjust enrichment on behalf of the Courts and their Personal to the disadvantage of the State Citizen Petitioner?

2. The Courts continue to exercise a practice of requiring fees for documentation which should be readily accessible. For example, Courts charge excessive fees for transcripts, and/or records, and/or copies of records that may be vital to an individual interest in appealing and or redressing a matter. How is this possible when accommodations via budgetary mechanisms and/or procedures are already in place? These additional fees which have already been allocated and accounted for, and presumably set aside in the annual budget, do not require the payment of these additional fees after they have already been allocated for and set aside in the annual budget for the Courts. This does appear to amount to double jeopardy, when taken into account that the Congressional budget which is delegated to the Court through the Administrative Office of the United States Courts Judicial Conference Committees, with input from the Courts, advise the AOUSC as it develops the annual judiciary budget for approval by the United States Congress, *See:* www.usgovernmentmanual.gov/Agency.

3. It is Plaintiff's belief that this successfully rebuts any presumption that Plaintiff is required to pay such fees. Plaintiff hereby challenges such a process and/or procedure requiring the payment of fees a second time to be permitted access to the Judicial Branch of Government. There has been no evidence placed on any record with the exception of a presumption In the instant matter. Assistance to the Plaintiff should not be considered a privilege where the payment of fees is involved. As such is apparently not mentioned within the framework of the Constitution and this Affiant/Plaintiff is formally requesting the Court to assist Affiant in

the non-payment of fees, and in the obtaining redress by way of appeal. This Affiant does hereby bring forth a formal CONSTITUTIONAL CHALLENGE, respecting any such requirement, rule, and/or statute, suggesting that such is a violation of Affiant's right to due process and to access the Court via redress of grievance.

4. Please be patient as Affiant has to reason and reconcile how such practices can be constitutional. The First Amendment for the United States Constitutions' Bill of Rights, guarantees to every citizen and to every person in the United States the right to petition the Government of the United States for a redress of grievance. It further States that "*Congress shall make no [budgetary rules, statute at large, Federal code, Federal ordinance, penal code, penal ordinance, regulation procedures act, mandate, and/or other mechanism that interferes with the] law prohibiting and/or abridging the rights of the people to petition the Government for a redress of grievances.*" Therefore, if the Court still receives an annual budget and the Courts are required to document the necessity for such a budget, how is it that every time Affiant tries to petition the Government for a redress of grievance that Affiant has to either pay a fee, fill out a waiver, or beg or assistance? Affiant does not think that this was the will of the people and Affiant does not believe that there is a constitutional amendment, a Bill of Rights, whether on the State level or the national level, that would permit the Government to charge the people twice just to obtain access to resources, and/or redress.

5. If the right to petition the Government for a redress of grievance is a secured right delineated in the Bill of Rights for the United States of America Constitution, how is it that Government has stated that an individual in order to obtain redress via an appeal needed some sort of statutory authority authorizing such? When it is Judicial knowledge that the word and/or term redress in its legal context implies to an appeal to the Government to correct the wrongs, for reparations, for relief, and for remedy? Doesn't this amount to an appeal? Hence, how can Government on either the national level or the local level, deny access to redress by stating that an appeal may only be conducted by leave of the Court?

6. The law States that, "*Each person shall be secure in their persons, possessions, things, assets, property, and homes and that the only way to dispossess a party from these things is via a warrant based on probable cause.*" It appears that probable cause always implies Judicial determination and that Judicial determination references probable cause which requires sworn testimony and evidence to be presented before a Judicial official. In essence, isn't this a "hearing?"

7. If witness testimony is required in order for my property, my possession, my rights, and/or my person to be
seized, is Affiant not under the most fundamental principles of due process to be afforded and/or the opportunity of being present before the deprivation occurs? As such any hearing whereas a party is requesting possession of property, possessions, person, affects, papers, is Affiant not to be afforded an opportunity to be present at such a hearing prior to the issuance of any such order for the deprivation of Affiants property and/or rights associated with such property?

8. The Court is said to be operating under the Judicial Branch of Government, which means the Court has constitutional delegation, therefore; the question remains, why is the Court relying

on presumption in order to deprive American Citizens, Members of the Public, and the People of rights secured them by the Constitution that are inalienable, despite the prohibitions against such deprivations? If the Court and the other officers of the Courts i.e, attorneys can rely on Court's opinion which is often termed as "caselaw," are the equal protection principles of the Declaration of Independence applicable and are other members of society afforded the same right and the same credence when utilizing such documented opinion cites?

9. Since Congress has held that the statutes are only *prima facie* evidence of law, does the Constitution require that the law be evidenced on the record when making an application of a statute, code, ordinance, and/or regulation to any member of the public, the people, American citizens, American nationals, and/or American natives? Neither the code (statute, regulation, ordinance, and/or other *prima facie* legislation) is only- *Prima Facie* [Latin, On the first appearance]. A fact presumed to be true unless it is disproved. In common parlance the term *prima facie* is used to describe the apparent nature of something upon initial observation. By definition it is not law and only a presumption of law, which is not supported by due process of law. Due process of law does not require one to rebut the presumption, for the law of maxim holds that - *"... various authorities have taken that very position and asserted that every man is presumed to know the law, and some aver that such presumption is conclusive, a principle which, if carried to its logical conclusion, would render the judges of inferior Courts liable to impeachment when reversed on questions of law. Frequently the presumption is stated to be the equivalent of the maxim, Ignorantia Legis Neminem Excusat, which is a very different proposition. The general rule that ignorance of the law excuses no one, is sanctioned by both the Anglo-American and Roman or Civil law systems. It is not rooted in dogma, but is based upon considerations of expediency and necessity, the public advantages of the rule vastly outweighing occasional individual inconveniences."* Simply stated, everyone is required to know the law, as "ignorance of the law is no excuse." Such a conclusion would require one to know presumptions as there appears to be no authority holding that a party is required to know and defend a presumption, and/or be liable for a presumption, which means a presumption is not the law! Would this not be a correct understanding due to the fact that ignorance of the presumption of law is excusable under law?

## V.     What Does Congress Have to Say on this Issue as to What is Law?

1. Please take special note of the following information as per the Constitution "Congress shall make no law," which has been understood to imply that Congress are the lawmakers within the borders of the United States.

    a.  Positive Law Titles vs. Non-Positive Law Titles

Positive law codification by the Office of the Law Revision Counsel is the process of preparing and enacting a codification bill to restate existing law as a positive law title of the United States Code. The restatement conforms to the policy, intent, and purpose of Congress in the original enactments, however; the organizational structure of the law is improved, obsolete provisions are eliminated, ambiguous provisions are clarified, inconsistent provisions are resolved, and technical errors are corrected.

2.  Links to Current and Recently Completed Positive Law Codification Projects the Term "Positive Law."  The term "positive law" has a long-established meaning in legal philosophy but has a narrower meaning when referring to titles of the Code.  Positive Law Titles vs. Non-Positive Law Titles.  The Code is divided into titles according to subject matter.  Some are called positive law titles and the rest are called non-positive law titles.  A positive law title of the Code is itself a Federal statute.  A non-positive law title of the Code is an editorial compilation of Federal statutes.  For example, Title  10, Armed Forces, is a positive law title because the title itself has been enacted by Congress.  For the enacting provision of Title 10, *See:* first section of the Act of August 10, 1956, Ch. 1041 (70A Stat. 1).  By contrast, Title 42, The Public Health and Welfare, is a non-positive law title.  Title 42 is comprised of many individually enacted Federal statutes—such as the Public Health Service Act and the Social Security Act - that has been editorially compiled and organized into the title but the title itself has not been enacted.

3.  The distinction is legally significant.  Non-positive law titles are *prima facie* evidence of the law, but positive law titles constitute legal evidence of the law in all Federal and State Courts (1 U.S.C. 204).  On one hand, non-positive law titles as *prima facie* evidence of the law and on the other hand, positive law titles as legal evidence of the law, means that both types of titles contain statutory text that can be presented to a Federal or State Court as evidence of the wording of the law.

4.  The difference between *"prima facie"* and "legal" is a matter of authoritativeness.  Statutory text appearing in a non-positive law title may be rebutted by showing that the wording in the underlying statute is different.  Typically, statutory text appearing in the Statutes at Large is presented as proof of the words in the underlying statute.  The text of the law appearing in the Statutes at Large prevails over the text of the law appearing in a non-positive law title.

5.  Statutory text appearing in a positive law title is the text of the statute and is presumably identical to the statutory text appearing in the Statutes at Large.  Because a positive law title is enacted as a whole by Congress, and the original enactments are repealed, statutory text appearing in a positive law title has Congress's *"authoritative imprimatur"* with respect to the wording of the statute.[1]  Recourse to other sources such as the Statutes at Large is unnecessary when proving the wording of the statute unless proving an unlikely technical error in the publication process.

6.  Non-positive law titles and positive law titles both contain laws, however; the two types of titles result from different processes.  A non-positive law title contains numerous separately enacted statutes that have been editorially arranged into the title by the editors of the Code.

7.  The organization, structure, and designations in the non-positive law title necessarily differ from those of the incorporated statutes.  There are certain technical, although non-substantive, changes made to the text for purposes of inclusion in the Code.

---

[1] *See: Washington-Dulles Transp., Ltd. v. Metro. Wash. Airports Auth.*, 263 F.3d 371, 378 n.2 (4th Cir. Va. 2001); *See generally:* NORMAN J. SINGER & J.D. SHAMBLE SINGER, STATUTES AND STATUTORY CONSTRUCTION, § 36A.10, (7th ed. 2009).

8.   A positive law title is basically one law enacted by Congress in the form of a title of the Code. The organization, structure, designations, and text are exactly as enacted by Congress.  In the case of a positive law title prepared by the Office of the Law Revision Counsel, the title is enacted as a restatement of existing statutes that were previously contained in one or more of the non-positive law titles.

9.   In such a restatement, the meaning and effect of the laws remain unchanged as only the text is repealed and restated.  In preparing a codification bill, the Office uses the utmost caution to ensure that the restatement conforms to the understood policy, intent, and purpose of Congress in the original enactments.

10. Therefore, it appears, that only the title is construed as "law."  A positive law title is basically one law enacted by Congress in the form of a title of the Code.  How is this possible?  In the entire U.S.C., only that titles are construed as law, not the actual text, but the title, this is so perplexing, Affiant does not believe an explanation will do.  Affiant hopes that the Court will provide the authority for which such is completed.  Affiant does not believe that the Constitution lends any authority to Congress to make a law for the title primarily construed as *prima facie* or the appearance of law and the wording is considered supportive and can still be construed against an individual.  As previously stated, such is amazing.

11. For example and as outlined by the great State of Missouri the difference should be noted:

> Revised Statutes of Missouri (RSMo Section 3.090 - MO.gov)
> (L. 1949 p. 545 § 3.09, A.L. 1959 S.B. 88, A.L. 2014 S.B. 621 merged with S.B. 643);
> (1974) Revised statutes are no more than *prima facie* evidence of a statute, and revisors, absent a legislative act amending a section, have no authority to change substantive meaning of a law.[2]

12. There you have it.  The Missouri statutes are not law, hence where does the Court obtain their constitutional authority to act?  Again is this or is this not a Court of law?  Is this a Court of statutes?  Is this a Court of *prima facie* evidence?  Is this a Court of presumptions?  If it is more than one of these, then there must be some sort of statutory authority which permits it, and there must be some sort of notice to the people whereby they have authorized such conduct by the Courts.  Where can one locate this information because Affiant has looked and has been unable to locate such a statute, an ordinance, code, and/or a constitutional amendment whereas the people have consented to such conduct?  Even in the event of appearance, it would be unconstitutional on all levels due to lack of consent of the people.

13. There exists multiple office practices and procedures that apply to all officers associated with the public trust, which, if this particular body exists without any point during these proceedings at any moment, it is believed that that would make the proceedings unconstitutional.  Therefore, Affiant must bring forth the claim that Affiant does not believe that the oath of office with a Judicial officer presiding over these proceedings is valid.  Affiant believes that the oath of office is associated with the negating oath, otherwise known as "Negative Oath:"

---

[2] *Protection Mutual Insurance Co. v. Kansas City* (Mo.), 504 S.W.2d 127.

*Definition* of Negative Oath in English: NOUN

    a. Negative confession (now historical).
    b. (Now also) a promise not to do something or to abstain from something.

## VI.   Summary: The Statutes in Their Application

1. Presumption of "LAW." As noted above presumption of law is not a law, and nowhere is such found in the Constitution. Reliance on a presumption that an individual is presumed innocent, is not what the Constitution States. The Constitution simply States that, "no person shall be held to answer." This simply means that the burden is upon the party bringing the claim and to prove their claim. Similar to the concept that this Court demands that Affiant bring forth a valid claim and 'will dismiss Affiant's complaint if Affiant fail to State a claim whereby relief may be granted.' The statement that a person shall not be held does not in any way imply that there is some sort of preponderance of evidence statute, and/or amendment in the Constitution. As noted above a presumption does not exist, it is something that someone creates, the law does not create presumptions- It is a general rule of law that presumptions do not create their own foundations.[3] If presumptions do not create their own foundations, and this is a general rule of law, how can a Court of law rely on something that is without foundation, such a reliance when applied to one of the people such as myself renders the whole notion a presumption of so-called law not only an oxymoron but unconstitutional?

2. *Prima facie*, the evidence, *Prima facie* is not a rule of law, as noted above its reliance is on mere appearance and not actual law, the fact that *Prima facie* anything is not conclusive, and is not law [the making of a *prima facie* case does not change the burden of proof.[4] How can this being a purported Court of law, required to rely on facts and conclusions of law ever entertain a presumption, when such is not founded in law, is not conclusive, as it appears such is only the mere appearance of the reality, as explained above?

3. Policies, Procedures, and Rules of The Court. Affiant will be the first to admit, that rules and structure are absolutely necessary in a civilized community, however; where those rules are slighted in favor of one person or another and relied upon to an extent to where they disenfranchise a group of individuals, the pauperis/poor people, violate the very foundation of inalienable rights and the supreme law of the land the Bill of Rights. There is a general rule in the Court, where the Court requires use of its forms, and it has created some sort of rational to support such a presumption, when the Court has recognized that an individual who utilized toilet tissue to present a habeas corpus.[5] This Court has repeatedly returned individuals documents simply because it was not on one of their so-called official forms and/or in an official format, when the Judiciary Act of September 24, 1789 otherwise known

---

[3] *Highland Golf Club v. Sinclair Refining Co.*, D.C. Iowa 1945, 59 F. Supp. 911.
[4] *Powers v. Russell*, 13 Pick. 69, 76. *Delano v. Bartlett*, 6 Cush. 364, 366. *Central Bridge v. Butler*, 2 Gray, 130. *Nichols v. Munsel*, 115 Mass. 567. *Willett v. Rich*, 142 Mass. 356. *Broult v. Hanson*, 158 Mass. 17.]
[5] *Willis v. Unknown Defendants*, Civil Action No. 7:08-cv-00490 (W.D. Va. Sep. 30, 2008); *Cruz v. Estelle*, 497 F.2d 496 (5th Cir. 1974); *Holcomb v. Wallace*, C/A 1:21-359-MGL-SVH [ (D.S.C. Mar. 5, 2021); *Gomez v. Willacy Cnty. Jail*, Civil Action No. 1:19-170 (S.D. Tex. Oct. 21, 2020).

as Article Three specifically stated that the petition shall not be dismissed because it lacks form and/or format. That Act of Congress, Article Three has never been repealed despite the attempted replacement by the Judiciary Act of the 1940's codified at Title 28 of the U.S.C. The rules of the Court that are out of harmony with the First Amendment's prohibition on rules and/or lawmaking which abridges the rights of the people, as well as the policies and procedures of the Court, which infringes and/or abridges the rights of the people, in the free exercise of their secured rights is unconstitutional. These rules are created not by Congress or the lawmakers, but by some committee of nonelected officials and have a direct bearing upon the people such as Affiant while rendering its application arbitrary, capricious, and unconstitutional. As such is what this Affiant believes.

4. The Right to Challenge is secure in the Constitution. It is protected by the right to petition the Government for redress of grievances. A challenge is always to be construed as an appeal, for the correction of the wrong, or what someone believes to be a wrong. It is the same as a party challenging another party in a sporting event, not simply because one party thinks he is better at something, or can be another party, but simply because he feels that the other parties assertions are incorrect when applied to him and he looks to have judges make a determination after demonstrations, technically a so-called competition. This is the arena, adversarial though it may be, it is the system that the people have chosen when enacting the First Amendment to the Constitution for the United States of America, the foundation for the Bill of Rights. This Court has ignored all objections such objection as it appears may only be construed as a general challenge - *"When challenging a statute on constitutional grounds, a party may present a facial challenge to the statute as a whole or challenge the statute as applied to a specific set of facts."*[6]

5. The Misapplication of the SOVEREIGN IMMUNITIES DOCTRINE and rouge agents has somehow been held that Judicial officers, legislative officers, and executive officers have blanketed qualified immunity. Somehow this blanketed qualified immunity extends to lawyers, police officers, or whomever the trustee entrusted with the public trust presumes to apply the standard. Some judges have like tenure and have qualified immunity even when they violate the rights of one of the people to whom they been entrusted to uphold such rights as secured by the Constitution.[7] Immunity may be absolute, affording protection regardless of motive, or qualified, providing immunity only for acts done reasonably and in good faith. Judges and other officials functionally comparable to judges have long enjoyed absolute immunity from liability for damages.[8] Prosecutors have been regarded as "quasi-*Judicial*," as such is a policy not a law. Such appears to operate as a rule, and not a law, as nowhere in the Constitution does it ever say that a trustee can violate the rights of the people, the grantors of the agreement and, also the beneficiaries of that trust agreement to remain unscathed. Immunity only applies when the individual is acting within the bounds of the Constitution and not outside the bounds of the Constitution as the immunity protection comes from the Constitution, and not some phantom presumptive law not endorsed and/or created by the

---

[6] *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, ¶ 37; *Belalen v. Union Cent. Life Ins. Co.* (1944), 143 Ohio St. 329, 28 O.O. 295, 55 N.E.2d 629. *See: United States v. Salerno* (1987).

[7] *Simons v. Bellinger*, 643 F.2d 774, 777 (D.C. Cir. 1980).

[8] *Butz v. Economou*, 438 U.S. 478, 496, 98 S.Ct. 2894, 2905, 57 L.Ed.2d 895 (1978); *Pierson v. Ray*, 386 U.S. 547, 553-54, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967).

people as a whole. As long as the Constitution grants the people the right to petition for redress and the Constitution prohibits anyone from depriving another of due process of law, which would include public officials, entrusted with the public trust, there can be at no point or time anything known as 'absolute immunity.' It is self-serving that this doctrine was possibly created for the benefit of judges. This makes its self-serving and disingenuous as well as unconstitutional. Such should be the consideration of the people to determine since the Courts have stated that such a policy is for the absolute benefit of the people and not for the judges which is contrary to the reality, because it is the people such as myself whose rights are being infringed upon, by granting Judicial officers and other officers of the Court's blanket immunity and this Affiant as well as the Constitutional principles of Due PROCESS APPEARS TO object!

6. Definition of the "SUPREME LAW OF THE LAND." The universal meaning is the Bill of Rights giving supremacy to the California law. Affiant believes that the Court approves a plain violation of Article VI of the Constitution of the United States which makes that Constitution *"The supreme Law of the Land . . . anything in the Constitution or Laws of any State to the Contrary notwithstanding."* A State may not encroach upon the individual rights of people except for violation of a law that is valid under the "law of the land." The "Law of the land" of necessity includes the supreme law and the Constitution itself.

7. The basic purpose of the Bill of Rights was to protect individual liberty against governmental procedures that the Framers thought should not be used. That great purpose can be completely frustrated by holdings such as this. No State can put any kind of penalty on any person for claiming a [Right] privilege authorized by the Federal Constitution.[9] It is axiomatic that no person may be penalized for the exercise of a constitutional [Right] privilege.[10] The privilege against self-incrimination extends to grand jury and other governmental proceedings.[11] The Courts continue to contradict themselves in their opinions and rulings because they are relying it appears on presumptive and/or persuasive law as opposed to facts and actual conclusions of the law of the land and as Affiant, I definitely disagree and must charge that this practice infringes upon my rights and denies Affiant the right to access to justice. Affiant does hereby protest by way of challenge to such a practice, policy, and procedure.

8. The Rules of the Court, as stated above, are necessary, however, when the infringement upon the rights of the people or make it so cumbersome that one is mentally disemboweled from the process, make such rules and their application upon the American people void as well as unconstitutional. The rules must adhere to due process, yet the rules are written in legal terminology for which the common man and/or woman and/or other reasonable person is not required to study legal terminology in order to access the Court, but that is the current environment. For example, the term "appearance" does not mean to just show up as the legal term is defined as: "appear," "appearing," or "appearance," are words of art in the legal sense. *Black's Law Dictionary 94* (7th ed. 1999) defines "appearance" as *"[a] coming into Court as a party or an interested person, or as a lawyer on behalf of a party or interested person."*

---

[9] *Nelson v. Los Angeles County*, 362 U.S. 1, 10 (1960).
[10] *Grunewald v. United States*, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957).
[11] *Hale v. Henkel*, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906).

There are a number of cases in which this Court has written on whether or not a party has made an "appearance" for purposes of requiring notice before default judgment may be entered. Generally, the term "appearance" has been broadly construed for that purpose.[12] **The term also conveys the subjecting of one's person, interest, property, possessions, life, and liberty to the jurisdiction of the Court - An "appearance" is a term of art "by which one against whom suit has been commenced submits himself to the Court's jurisdiction."** As the term is used *in the Federal Rules of Civil Procedure, an appearance is more than physical presence at a hearing before a Judicial officer, and includes, among other things, being represented at non-Court hearings related to a case or filing papers in the case*.[13] Where is the Federal and/or State Government's reliance upon such an unconstitutional practice, forcing a party to subject themselves and/or to submit to the jurisdiction of another is unconstitutional, jurisdiction cannot be assumed or presumed is this not so? These are basic foundational principles and Affiant must object.

9.  This also reminds Affiant that entering a plea [either through a pleading, a plea deal, a plea of guilty, not guilty, and/or no contest], is the first step in granting the Court jurisdiction over a party and the subject matter. Affiant has not been tried and convicted on that complaint but on an unsigned and unverified complaint. As such being tried and convicted with an unsigned and unverified complaint is wrong as if the district Court had jurisdiction of the subject matter. This is not the case. It takes a pleading of some sort to invoke or confer jurisdiction. It is fundamental that pleadings are the juridical means of investing a Court with jurisdiction of the subject matter to adjudicate it. Pleadings must exist and describe a real existing matter of which the Court, according to its organization and purposes, may take jurisdiction. They are essential for *res adjudicata*. Without them there is no *res* and no *adjudication*. Without them the Court has nothing, tries nothing, and adjudges nothing. In 16 C.J. 176, the author says:

*"Jurisdiction to try and punish for a crime cannot be acquired otherwise than in the mode prescribed by [L]aw, and if it is not so acquired any judgment is a nullity. A formal accusation is essential for every trial for crime, without it the Court acquires no jurisdiction to proceed, even with the consent of the parties, and where the law requires a particular form of accusation, that form of accusation is essential. Jurisdiction to try offenses is ordinarily acquired by an indictment, or in some jurisdictions by an information and where the indictment or information is invalid the Court is without jurisdiction. Jurisdiction is in some cases, under statutes, acquired by mere complaint or affidavit, or by appeal from a conviction in a lower Court. "Jurisdiction to take cognizance of an offense or to render a particular judgment cannot be conferred upon a Court by the consent of the accused, either express or inferential. * * *"*[14]

   **VII.    Challenge Required**

---

[12] *See: State v. $33,000 U.S. Currency*, 2008 ND 96, 748 N.W.2d 420, *Lawrence v. Delkamp*, 750 N.W.2d 452, 458 (N.D. 2008).

[13] *IN RE SINK*, Bankruptcy No. 02-40042 JAB, Bankruptcy Number 02-32504 JAB, Bankruptcy Number 02-38843 JAB, at *1 (Bankr. D. Utah Feb. 28, 2003).

[14] *Rose v. District Court of Millard County*, 67 Utah 526, 534-35 (Utah 1926).

1.  If Jurisdiction to take cognizance of an offense or to render a particular judgment cannot be conferred upon a Court by the consent of the accused, either express or inferential, then why have the Courts presumed and/or assume jurisdiction without providing proof of jurisdiction, even in cases such as this where jurisdiction has been challenged. As noted above as to the statute, for which the Court assumes subject matter jurisdiction, is a challenge to the Court's jurisdiction, is this is not a correct assessment. So why has Affiant's challenge to the jurisdiction of the Court not been proved on the record, as by law?

2.  The Clerk Style Manual reports that the caption must have the names with all capital letters, why is this? For there is some evidence that there is a long-standing practice of capitalizing or gaining control of an individual through capitalization. The United States Federal Government has a printing office which goes by the name General/Government Printing Office, or GPO. The GPO style manual, and we must remember this is for Government says that any time the name is in all capital letters or block Capitals it denotes a non-sentient entity.
https://www.govinfo.gov/content/pkg/GPO-STYLEMANUAL-2008/pdf/GPO-STYLEMANUAL-2008-5.pdf.     The clerk of the Court is part of the executive branch of Government. Are they following the same pattern and the same format? For that would be a violation of Affiant's rights and Affiant's right to practice religion, as I do believe that to take my name and to render it in all capital letters. Is the spelling and usage of a proper name defined officially by US Government? Yes. The United States Government Printing Office in their "Style Manual," March 1984 Edition (the edition published as of March 2000), provides comprehensive grammar, style, and usage for all Government publications, including Court and legal writing.

3.  Chapter 3, "Capitalization," at § 3.2, prescribes rules for proper names:
"Proper names are capitalized." [Examples given are] Rome, Brussels, John Macadam, Macadam family, Italy, Anglo-Saxon." At Chapter Seventeen, "Court Work, the Rules of Capitalization," as mentioned in Chapter Three, are further reiterated:

> "17.1. *Court work differs in style from other work only as set forth in this section;*
> *otherwise the style prescribed in the preceding sections will be followed.*" After reading
> § 17 in entirety, there appears to be no other references that would change the
> grammatical rules and styles specified in Chapter Three pertaining to capitalization. At §
> 17.9, this same official US Government manual stated:
> "*In the titles of cases the first letter of all principal words are capitalized, but not such*
> *terms as defendant and appellee.*"

4.  Officers of the Court maintain a policy of adhering to the status quo' and the capacities of the two branches of Government. It should be noted that consideration that has long been held that no two branches of Government can occupy the same space nor maintain the same power, that each branch of Government's function and authority is distinct and unique unto themselves. Therefore, the question is how can an attorney who is licensed under the Attorney General for the State who is licensed under the Attorney General of the United States, who was license under the executive branch, the secretaries of State for the respective aforementioned entities, be an officer of both the executive/administrative branch of

Government, and the Judicial branch of Government being an officer of the Court? The reality is that it can't be. The delegation of authority and the separation of powers clauses prohibit such insurrections, because such a practice would be to war against the Constitution and the people themselves, making the practice unconstitutional. The same thing applies when the Court makes another executive agent who operates under the Attorney General's office, that is, police officers, officers of the Court, when they obviously are not of the Judicial branch of Government, but I look around the courtroom and i see police officers who are deemed officers of the Court, I see attorneys who are deemed officers of the Court, and I do believe that this is unconstitutional, and an intentional apparent encroachment upon the separation of POWERS mandate and an attempt to defraud myself and the general public and I object and challenge such practices as unconstitutional.

5. The Dual Oath taking by Public Officials, Officers of The Court, and Trust Agents, is the oath that nullifies as mentioned earlier. It is believed that Judicial officers often take two different oaths, one to uphold the Constitution and another to nullify the oath to uphold the Constitution. Such is why they participate in the unconstitutional practices mentioned above. As stated, earlier Affiant does not believe that this is a violation of the intent of the people, the Framers of the Constitution, an agreement for which every public servant knowingly, intentionally, and deliberately consents to either by acts, actions, interactions, forbearances, conduct and/or performances, making such an agreement binding upon that party, and when carried with an oath, it makes the contract irrevocable as was the intent and will of the people. If that is true, that would make the jurisdiction of the Court unconstitutional, as the officers sitting as Judge is operating outside the limitations of the Constitution, and even if they were to swear upon the record, their testimony could not be taken as truthful. It is taken into consideration the following: The Supreme Court, however; has held that: "Judicial immunity is not inapplicable simply because a Judge acts beyond his authority."[15] ("A Judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority . . . "). The judges are protected from Severin's claim for an award of monetary damages by their absolute immunity.[16] It appears this is a Court rule and not a law, because the Courts have continuously held that a Judge is protected by Judicial immunity so long as State act within the jurisdiction of their office, and that jurisdiction prohibits a Judge from lying on the record, as the record must remain true.[17] **Although there is danger that some wrongs may go unredressed as a result of the application of Judicial immunity, our system of justice has found it more tolerable for a few wrongs to go unredressed than for the Courts to be constantly harassed by suits brought by disappointed litigants.[18]** Again not a law but a rule that the People apparently never consented to, which appears to render and or subject such a rule unconstitutional and leaves it open for challenge and I do so in this instance because the Judicial officer in this matter and the others associated assume protection by the same immunity in an unconstitutional manner and I must object.

---

[15] See: e.g., Sparkman, 435 U.S. at 356, 98 S.Ct. 1099.
[16] Severin v. Parish of Jefferson, 357 F. App'x 601, 605 (5th Cir. 2009).
[17] Martinez v. Winner, 771 F.2d 424, 434 (10th Cir. 1985) [citing: Stump v. Sparkman,435 U.S. 349, 359, 98 S.Ct. 1099, 1106, 55 L.Ed.2d 331 (1978); Bradley v. Fisher,13 Wall. 335, 348, 80 U.S. 335, 348, 20 L.Ed. 646 (1871)].
[18] Id. at 436. Navajo Nation v. District Court for Utah, 624 F. Supp. 130, 136 (D. Utah 1985).

6. The Denial of the Protection of the Bill of Rights and associated Inalienable Rights, the Court chose and presumed that it could apply a non-Bill of Rights guarantee, substitute the due process clause of the Fifth Amendment for that of a *prima facie* due process right/ privilege, that I neither consented to nor agreed to waive my secure rights under the First, Fourth, Fifth, Sixth, Ninth, and Tenth Amendments and This Affiant must as a matter of right, bring forth challenge an objection to such a practice is unconstitutional.

7. A CHALLENGE TO THE RESTRICTION placed upon the people respecting the right to challenge a statute is unconstitutional, it has been held that ignorance of the law is inexcusable, as everyone is deemed to know the law[19] and although statutes are not law, but only appeared to be law *i.e. Prima facie*, the claim that a party can only challenge a statute, rule, code, regulation, ordinance if they are directly affected by such code, rule, or regulation, is unconstitutional. If everyone is deemed to know the law, and the law applies equally to everyone (although as indicated above by Common Judicial Opinion, statutes, rules, regulations, codes are not law!), then the law applies and affects everyone equally, is does not so? Which means that it is unconstitutional to presume that a party cannot challenge a code, rule, regulation, statute, ordinance as unconstitutional, simply because they are not a party to a specific action, which means that, that code does not apply to them at every moment, but only at certain moments, which means a does not apply equally to every citizen of the United States which would make it unconstitutional, because equal protection of law is shrouded in the foundation of the founding of this country *i.e.* the Declaration of Independence **"All Men Are Created Equal."**

8. A Challenge to the DISTRICT Jurisdiction, the city is a district, the county of the district, the village of the district, the town is a district, water is a district, since everything is a district (*See*: DC code 22 – 3403), and yet the district is only the seat of Government for the United States of America (*See*: D.C. Code 1 – 101 and 1 – 102), then Congress has stepped outside its bounds of 10 mi.² radius in applying its statutes to individuals outside the district, and the district being implanted inside the various States is a violation of the Ninth and Tenth Amendments of the Bill of Rights of the Constitution of the United States of America which makes this application upon myself and my fellow inhabitants unconstitutional.

**VIII. Constitutional Challenge Checklist:**

1. Affiant's right to due process is protected by the First, Fourth, Fifth, Sixth, Ninth, and Tenth Amendments of the Bill of Rights as well as the Declaration of Independence.

2. Affiant's right to receive due process of law as expressed in the Bill of Rights in referencing the common law of the People established and in place at the time of the construction of the Constitution. Common law was relied upon by the people prior to the formation of a Constitution and Affiant was not given an opportunity to challenge not only the statute, nor the jurisdiction, but the legality of the proceedings.

3. Are the Court's Judicial and executive officers constitutionally qualified to prosecute and adjudicate the Laws of New York ?

---

[19] *Estes v. Conoco Phillips Co.*, 2008 OK 21, ¶ 22, 184 P.3d 518, 526–527.

4.  Can this Court limit or impair or render complete justice between the parties?

5.  Affiant further believes that before the lower court can not act judicially to deprive the respondent of his lawfully protected property rights without due process to seek his relief in he higher court to which this lower court has no jurisdiction. As sated in part of Section 1 of the fourteenth amendment: ... "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the law."

6.  A most exhaustive judicial inquiry into the meaning of the words "due process of law," as found in the fifth amendment, resulted in the unanimous decision of this court, that they do not necessarily imply a regular proceeding in a court of justice, or after the manner of such courts. Respondent has informed his court of his pending action for relief in the supreme court hence ensuring his rights o due process inter alia. Absent such process, the Clause prohibits any deprivation of certain essential rights (life, liberty, or property) by a government actor(rights both enumerated and not enumerated) . Put another way, the Due Process of Law Clause requires that the executive secure the judiciary's approval before depriving an individual of their rights.

7.  The Judgment of foreclosure sale mentions among other concerns specifically; ...

    "ORDERED, ADJUDGED AND DECREED, that the said sale shall be subject to any equity of redemption of the UNITED STATES OF AMERICA to redeem the premises within 120 days from the date of sale should the United States be a defendant in the action: and it further ..." then failure to add the United States of America deems failure to enjoin indispensable parties.

The Banker's Manifesto ties in with U.S. Senate Document No. 43, 73rd Congress, 1st Session (1934), to wit:

*"The ultimate ownership of all property is in the State; individual so-called "ownership" is only by virtue of Government, i.e., law, amounting to mere "user" and use must be in acceptance with law and subordinate to the necessities of the State."* See copy of Judgment.

8.  Accordingly it has been held The absence of a necessary party in a foreclosure action leaves that party's rights unaffected by the judgment and sale, and the foreclosure sale may be considered void as to the omitted party ( see 6820 Ridge Realty v Goldman, 263 AD2d at 26; Polish Natl. Alliance of Brooklyn v White Eagle Hall Co., 98 AD2d at 406; see also Glass v Estate of Gold, 48 AD3d 746, 747; Board of Mgrs. of Parkchester N. Condominium v Alaska Seaboard Partners Ltd. Partnership, 37 AD3d 332, 333) 1426 46 St. v. Klein, 60 A.D.3d 740, 742 (N.Y. App. Div. 2009)

As per and pursuant to Full Faith and Credit of the United States Of America

## Verification and Validation

Affiant hereby attests that the aforementioned information is based on firsthand knowledge and/or information and such is relied upon in bringing forth this Notice of Constitutional challenge/claim/complaint, that such is attested, sworn, ascribed, and declared as wholly accurate, witnessed by and before God, on this day ascribed to herein.

Date: 10.04.2022                              : _Marcia Pennico_
                                                    Marcia Pennicott

## ACKNOWLEDGMENT

United States of America              )
State of New York                     )
County of _West_                      )

On _10/4/22_ personally presenting Marcia Pennicott (*natural person*) before me, known or identified to me to be the individual who executed the foregoing document and acknowledged the same as a free act and deed for uses and purposes therein expressed.

*WITNESS my hand and official seal.*

Date: _10/4/22_

                                        Joseph E Mason
                                        Notary Public, State of New York
                                        Reg. No. 01MA6066394
                                        Qualified in Westchester County
                                        Commission Expires November 13th, 2025

                                        _Notary Public_

# Certificate of Service

In accordance with Federal Rules of Civil Procedure Rule 5.1: I Marcia Pennicott have served a copy of this notice upon the New York Attorney General by certified mail .

Dated: October 5, 2022

Marcia Pennicott

Letitia James
Attorney General
Office of the Attorney General
The Capitol
Albany, NY 12224-0341

# EXHIBIT    A

## COPY OF JUDGMENT OF FORECLOSURE AND SALE

At _____ Term, Part ___ of the
Supreme Court of the State of New York,
County of WESTCHESTER, on the
7 day of January, 2015.

PRESENT: HON. CHARLES D. WOOD , J.S.C.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
YSETN123

FEDERAL NATIONAL MORTGAGE
ASSOCIATION,                                          JUDGMENT OF FORECLOSURE
                                    Plaintiff,        AND SALE

    -vs-                                              Index No. 50326/2013

MARCIA P. PENNICOTT; NATIONAL CITY BANK;
GLENMORE PENNICOTT; ANDRE PENNICOTT;

                                    Defendants.

On the Summons, Complaint and Notice of Pendency of Action duly filed in this action
on 01/09/13, and all proceedings thereon, and on reading and filing the Affirmation dated
November 21, 2014 of CHRISTOPHER PAVLIK, ESQ. of FEIN, SUCH & CRANE, LLP,
attorneys for the plaintiff, showing that each of the defendants herein has been duly served with
the Summons and Complaint in this action, or has voluntarily appeared, and stating that more
than the legally required number of days has elapsed since said defendants were so served and/or
appeared; and that none of the defendants has served any answer to said Complaint, nor has their
time to do so been extended; and that the Complaint herein and due Notice of Pendency of this
action containing all the particulars required to be stated therein was duly filed in the Office of
the Clerk of the County of WESTCHESTER, on 01/09/13, and an Order of Reference having
been duly made to compute the amount due to the plaintiff upon the bond(s)/note(s) and
mortgage(s) set forth in the Complaint and to examine and report whether the mortgaged
premises can be sold in parcels,

    AND on reading and filing the Oath and Report of CLEMENT S. PATTI, JR., ESQ.,

Esq., the Referee named in said Order, by which Report, dated NOVEMBER 10, 2014, it appears that the sum of $652,396.02, was due on OCTOBER 6, 2014; and that the mortgaged premises should be sold in one parcel,

NOW, on motion of FEIN, SUCH & CRANE LLP, attorneys for the plaintiff, it is

ORDERED, that the motion is hereby granted without opposition; and it is further

ORDERED, that the said Oath and Report of the aforementioned Referee is hereby, in all respects, ratified and confirmed; and it is further

ORDERED, ADJUDGED AND DECREED, that the mortgaged premises, and if not sold sooner, any and all personal property in which the plaintiff has a security interest, as described in *the Lobby Supreme* the Complaint in this action, be sold as one parcel at public auction at _Lobby of 111 Dr. Martin Luther King Jr., Blvd, W.P NY 10601_____ by and under the direction of CLEMENT S. PATTI, JR., ESQ., Esq., who is hereby appointed Referee for that purpose; that the said Referee give public notice of the time and place of such sale according to law and the practice of this Court, in a publication which complies with the statutory requirements set forth in Real Property Actions and Proceedings Law Section 231, to wit: _Westchester Journal News_ and it is further

ORDERED, ADJUDGED AND DECREED, that the said sale shall be subject to any equity of redemption of the UNITED STATES OF AMERICA to redeem the premises within 120 days from the date of sale should the United States be a defendant in the action; and it is further

ORDERED, ADJUDGED AND DECREED, that the Referee conducting the sale shall pay out of the proceeds, as costs of the sale, in accordance with their priority according to law, all taxes, assessments, sewer rents and water rates and unpaid City Agency liens which are at the time of sale a lien on the premises, together with such interest or penalties as may have lawfully accrued thereon to the date of payment; and it is further

ORDERED, ADJUDGED AND DECREED, that in the event the property is purchased by a third-party, any such taxes, assessments, sewer, rent and water rates shall be pro-rated as of the date of transfer of title, and the third-party purchaser shall assume all responsibility for same as of the date of such transfer of title, and it is further

ORDERED, ADJUDGED AND DECREED, that the sale be subject to:

a)    Rights of the public and others in and to any part of the mortgaged Premises that lies within the bounds of any street, alley, or highway; restrictions and easements of record;

b)    Any state of facts that an accurate, currently dated survey might disclose;

c)    Rights of Tenants, if any.  It shall be the responsibility of the Purchaser to evict or remove any parties in possession of the Premises being foreclosed herein;

d)    The right of redemption of the United States of America, if any;

e)    The present condition of the property which is being sold "as is" without  any representations or warranties whatsoever;

f)    Any arrangements made prior to the sale between the Mortgagee and the Mortgagor for the reinstatement, payoff, modification or workout of the delinquent note and mortgage which are unknown to the Referee at the time of the sale.  In such event, the sale shall be deemed null and void and any deposit will be promptly refunded to the successful bidder, without recourse against the Referee, the Plaintiff, the plaintiff's attorneys, agents or assigns or the borrowers; and it is further

ORDERED, ADJUDGED AND DECREED, that the plaintiff may, after entry of the judgment, add to the amount due any and all expenses incurred in the maintenance and preservation of the property for inspection fees, maintenance charges, taxes and assessments and hazard insurance premiums or other advances necessary to preserve the property which were not included in the Referee's report, whether or not said advances were made prior to or after entry of judgment,

AND that the plaintiff or any other parties to this action may become the purchaser or purchasers at such sale; that in case the plaintiff shall become the purchaser at the said sale, it shall not be required to make any deposit thereon; that said Referee execute to the purchaser or purchasers on such sale a Deed of the premises sold; that such Referee on receiving the proceeds of such sale shall deposit the proceeds of sale in his own name as Referee in _____ _____his___Iola___Account_____and shall

thereafter make the following payments and checks drawn for that purpose:

FIRST: The statutory fees of said Referee for conducting the sale shall not exceed

$500.00.  The Referee will be entitled to a fee of $ 250  for each sale that is cancelled or adjourned.

In the event of a third party sale or adjourned or cancelled sales, the Referee may apply for additional fees to be awarded by separate order, upon application of the Referee on notice to all parties.  In the event that the Referee intends to apply for a further allowance of the Referee's fees, the Referee may leave upon deposit such amount as will cover such additional allowance to await the further order of this Court after Application duly made.

SECOND:  The expenses of the sale including posting and advertising upon presentation of bills presented to the referee and certified to be correct, duplicate copies of which shall be annexed to the Referee's report of sale when filed. Such expenses shall not include the deed transfer tax, which shall be paid by the successful bidder.

THIRD:  In the event the property is purchased by a third party, time is of the essence with respect to the closing date.  Closing must occur no more than 45 days from the date of sale, unless agreed upon in writing by the Plaintiff and third party purchaser.  The failure of Purchaser to appear ready, willing and able to pay the balance of the purchase price within 45 days from the date of sale is a material default under the terms of sale.  If Purchaser so defaults, the foreclosure sale will automatically be rescheduled and the Purchaser's deposit will be forfeited and applied towards the costs and expenses associated with the default, such as, but not limited to, the rescheduling of the foreclosure sale and any property taxes which have accrued from the result of such default.

FOURTH:  Said Referee shall also pay to the plaintiff or its attorney the sum of $1,955.00 adjudged to the plaintiff for costs and disbursements in this action, to be taxed by the clerk, together with an additional allowance of $_____ hereby awarded to the plaintiff in addition to costs; and also $652,396.02 the said amount so reported due as aforesaid, together with interest on the principal balance due at the rate set forth in the note and mortgage from OCTOBER 7, 2014 to the date of entry of this Judgment then with interest on the whole at the legal rate from the date of entry of Judgment to the date of transfer of the Referee's deed, or so much thereof as the purchase money of the mortgaged premises will pay of the same, plus

reasonable attorneys fees in the amount of $1,800.00 and any maintenance, preservation or other expenses paid by the plaintiff as authorized by this Judgment pursuant to the terms of the Mortgage, plus reasonable attorney's fees in the amount of $250.00 if the mortgage is discharged or reinstated, which fees are to be services rendered in vacating Judgment of Foreclosure, discontinuance of legal action, and canceling the Notice of Pendency, not previously included in any computations upon presentation to the Referee of the proper receipts.

FIFTH: That in case the plaintiff be the purchaser of said mortgaged premises at said sale, said Referee shall not require the plaintiff to pay in cash the entire amount bid at said sale, but shall execute and deliver to the plaintiff a deed of the premises sold upon the payment to said Referee of the amounts specified above in items marked "First" and "Second"; that the balance of the amount bid, after deducting the amounts paid by the plaintiff, for Referee's fees, and advertising expenses, shall be allowed to the plaintiff and applied by said Referee upon the amounts due to the plaintiff as specified above in item marked "Third"; that if after so applying the balance of the amount bid, there shall be a surplus over and above said amounts due to the plaintiff, the plaintiff shall pay to said Referee, upon delivery of said Referee's Deed, the amount of such surplus; that said Referee on receiving said several amounts from plaintiff shall then deposit the balance.

SIXTH: That said Referee deposit the surplus money, if any, with the WESTCHESTER County Comm. of Finance within five days after the same shall be received and be ascertainable to the credit of this action, to be withdrawn only on the written order of this Court signed by a Justice of this Court, that the said Referee make his Report of such sale under oath showing the disposition of the proceeds of the sale and file it with the Clerk of the County of WESTCHESTER within thirty days after completing the sale and executing the proper conveyance to the purchaser and that if the proceeds of such sale be insufficient to pay the amount reported due the plaintiff with interest and costs as aforesaid, the plaintiff may recover of the defendant(s) MARCIA PENNICOTT the whole deficiency or so much thereof as the Court may determine to be just and equitable of the mortgage debt remaining unsatisfied after the sale of the mortgaged premises and the application of the proceeds thereof, provided a motion for a

deficiency judgment shall be made as prescribed by Section 1371 of the Real Property Actions and Proceeding Law within the time limited therein, and the amount thereof is determined and awarded by an order of this Court as provided for in said action, unless the Defendant, MARCIA PENNICOTT obtained a bankruptcy discharge and such other or further relief as may be just and equitable; and it is further

ORDERED, ADJUDGED AND DECREED, that the purchaser or purchasers at such sale be let into possession upon service of the Referee's deed pursuant to CPLR §308; and it is further

ORDERED, ADJUDGED AND DECREED, that each and all of the defendants in this action and all persons claiming under them, or any or either of them, after the filing of such Notice of Pendency of this action, be and they hereby are, barred and foreclosed of all right, claim, lien, title, interest and equity of redemption in their said mortgaged premises and each and every part thereof; and it is further

ORDERED, ADJUDGED AND DECREED, that the Referee at the time of sale may accept a written bid from the Plaintiff or the Plaintiff's attorneys, just as though the Plaintiff were physically present to submit said bid; and it is further

ORDERED that by accepting this appointment the Referee certifies that he/she is in compliance with Part 36 of the Rules of the Chief Judge (22 NYCRR Part 36), including, but not limited to, Section 36.2 (c) ("Disqualifications from appointment"), and Section 36.2 (d) ("Limitations on appointments based upon compensation"); and it is further

ORDERED, that the referee appointed to sell herein be served with a signed copy of this Judgment of Foreclosure and Sale with notice of entry.

That a description of the said mortgaged premises hereinbefore mentioned, is annexed hereto as Schedule A - Legal Description.

Dated: January 9, 2015

_____
HON. CHARLES D. WOOD
Supreme Court Justice

01-14-2015



69 Cascade Drive · Knowlton Building, Suite 101, Rochester, NY 14614 (888-250-9056 / F: 888-250-9057) www.webtitle.us

## SCHEDULE A
### DESCRIPTION OF MORTGAGED PREMISES

Title No.: WTA-10-25749-NY-FCTN

ALL that certain plot, piece or parcel of land, situate, lying and being in the Village of Pelham Manor, Town of Pelham, County of Westchester and State of New York, consisting of parts of Lots Nos. 8 to 13 inclusive, in Block M on map entitled, "Windsor Heights, Map of Property belonging to Pelham Bay Park Land Company situated in the Town of Pelham, Westchester County, N.Y." made by L.E. Van Etten, dated November, 1903, and filed in the Westchester County Clerk's office, Division of Land Records, on September 22, 1904 as Map No. 1405, and which portions of said lots, taken together as one parcel are more particularly bounded and described as follows:

BEGINNING at the corner formed by the intersection of the southwesterly side of Grant Avenue (formerly Chittenden Avenue) with the northwesterly side of Terrace Place;

RUNNING THENCE along said side of Terrace Place South 28 degrees 14 minutes 40 seconds west 83.30 feet to a point;

RUNNING THENCE through Lots Nos. 13, 12, 11, 10, 9 and 8, North 61 degrees 45 minutes 20 seconds West 150 feet to a point on the southeasterly side of Lot No. 7;

RUNNING THENCE along the same North 28 degrees 14 minutes 40 seconds East 83.30 feet to the southwesterly side of Grant Avenue, (formerly Chittenden Avenue);

RUNNING THENCE along the same South 61 degrees 45 minutes 20 seconds East 150 feet to the point or place of BEGINNING.

Premises: 991 Grant Avenue, Pelham Manor, NY 10803
Tax Map/Parcel ID No.:   Section: 166.44 Block: 1 Lot: 71

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
Our File #: YSETN123

FEDERAL NATIONAL MORTGAGE ASSOCIATION,

BILL OF COSTS

Plaintiff,

-vs-

Index No. 50326/2013

MARCIA P. PENNICOTT; NATIONAL CITY BANK;
GLENMORE PENNICOTT; ANDRE PENNICOTT;

Defendants.

## COSTS

| | | |
|---|---|---|
| Costs before Note of Issue-CPLR Sec. 8201(1) | | $200.00 |
| Allowance by statute - CPLR Sec. 8302 (a) (b) | | |
| First $200.00 @ 10% | $20.00 | |
| Next $800.00 @ 5% | $40.00 | |
| Next $2,000.00 @ 2% | $40.00 | |
| Next $5,000.00 @ 1% | $50.00 | $150.00 |
| Additional allowance - CPLR Sec. 8302(d) | | $50.00 |

### FEES AND DISBURSEMENTS

| | |
|---|---|
| Fee for Index Number - CPLR Sec. 8018(a) | $400.00 |
| Clerk's fee for filing Notice of Pendency CPLR Sec. 8018(a), Sec. 8021(a)(10) | $35.00 |
| Referee's fee to compute - CPLR Sec. 8003(a) | $250.00 |
| Paid for searches - CPLR Sec.8301(a)(10) | $150.00 |
| Serving copy of Summons and Complaint pursuant to CPLR Sec. 8301(a) | $535.00 |
| Fee for Request for Judicial Intervention | $95.00 |
| Fee for Order of Reference | $45.00 |
| Fee for Judgment of Foreclosure and Sale | $45.00 |

| | |
|---|---|
| Total | $1,955.00 |

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF WESTCHESTER

Our File #: YSETN123

---

FEDERAL NATIONAL MORTGAGE ASSOCIATION,

ATTORNEY'S AFFIRMATION OF
BILL OF COSTS

                                        Plaintiff,

-vs-

Index No. 50326/2013

MARCIA P. PENNICOTT; NATIONAL CITY BANK;
GLENMORE PENNICOTT; ANDRE PENNICOTT;

                                        Defendants.

---

STATE OF NEW YORK)

COUNTY OF NASSAU) ss.:

   CHRISTOPHER PAVLIK, ESQ., an attorney admitted to practice in the Courts of this

State, affirms:

   I am an attorney in the law firm of Fein, Such & Crane, LLP, attorneys for the plaintiff in

the above-entitled action; that the foregoing disbursements have been incurred in this action and

are reasonable in amount.

   The undersigned affirms that the foregoing statements are true, under penalties of perjury.

Dated: November 21, 2014

                                        CHRISTOPHER PAVLIK, ESQ.

                                        FEIN SUCH & CRANE, LLP

                                        Attorneys for Plaintiff

                                        1400 OLD COUNTRY ROAD STE C103

                                        WESTBURY, NY 11590

                                        516/394-6921

<u>CERTIFICATE OF MAIL</u>

I, Marcia Pennicott hereby certify that I have served a copy of the following Amended Complaint, to the defendants by electronic filing via the NYSCEF system on 10-04-2022 via email Temporary Pro Se Filing@nysd.uscourts.gov. See attached confirmation page.


Honorable Judge Lorna G. Scofield
District Judge of US District Court
Southern District of New York
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

Brian P. Scibetta, Esq
Chong S. Lim Esq.
MCCALLA RAYMER LEIBERT PIERCE, LLP
420 Lexington Avenue, Suite 840
New York, NY 10170
Tel: 347-286-7409
Attorneys for Defendants,
JPMorgan Chase Bank, N.A., and
Federal National Mortgage Association

Supreme Court
111 Dr. Martin Luther King Dr.
White Plains, NY 10601-2594


Date: 10-05-2020

Marcia Pennicott